UNITED STATES, Appellee

v

PAUL D. GENTLE, Airman Basic,
U. S. Air Force, Appellant

16 USCMA 437, 37 CMR 57

No. 19,427

December 16, 1966

*Lieutenant Colonel William A. Howland, Jr.*, argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

Opinion of the Court

KILDAY, Judge:

The petitioner was originally tried and convicted on four separate charges of violations of the Uniform Code of Military Justice, for which he was sentenced to a bad-conduct discharge, partial forfeitures, and confinement at hard labor for six months. Intermediate re-

viewing authorities, however, disapproved and dismissed three of the charges and reduced the sentence. As he appears before us, the petitioner stands convicted only of failure to obey a lawful order (Charge II), in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892. His sentence, as finally approved, extends to a bad-conduct discharge, partial forfeitures for two months, and confinement at hard labor for four months.

We granted the petitioner's request for review to determine the following issues:

(1) Whether the order alleged in Charge II is illegal as merely implementing an illegal restriction; and

(2) Assuming the evidence is sufficient to sustain Charge II, whether the affirmed sentence is excessive.

Since in our view the charge of which the petitioner now stands convicted is interwoven with Charge I, which was disapproved and dismissed by the supervisory authority, both are set forth verbatim hereinafter:

"Charge I: Violation of the Uniform Code of Military Justice, Article 134

"Specification: In that AIRMAN BASIC PAUL D. GENTLE, United States Air Force, 96 Organizational Maintenance Squadron, having been duly restricted to the limits of Dyess Air Force Base, Texas, did, at Abilene, Texas, on or about 21 October 1965, break said restriction.

"Charge II: Violation of the Uniform Code of Military Justice, Article 92

"Specification: In that AIRMAN BASIC PAUL D. GENTLE, United States Air Force, 96 Organizational Maintenance Squadron, having knowledge of a lawful order issued by Major John W. Bozeman Junior to sign in with the Charge of Quarters every hour on the hour until he retired for the night, an order which it was his duty to obey, did, at Dyess Air Force Base, Texas, on or about 22 October 1965, fail to obey the same."

Relative to Charge I, Major Bozeman, the squadron commander, testified he informed the appellant on Tuesday, October 19, 1965, that he was restricted to the confines of Dyess Air Force Base until further notice, his reason being, "So that he would be present for duty during the normal duty hours." According to the commander, notification of restriction was given orally and in writing, and the original of the written document was given to the petitioner. As of the date of trial, November 24, 1965, the order of restriction had not been removed by competent authority.

Major Bozeman further testified, as to Charge II, that in the afternoon of Friday, October 22, 1965,

". . . I *reminded* Airman Gentle that he was *still* restricted to the base and that he was to sign in with the CQ when he was not working or sleeping on the hour every hour there; those times that I mentioned." [Emphasis supplied.]

This procedure, which was to begin at 5:00 p.m. on Friday, at the termination of the normal duty hours, was orally communicated to the petitioner. When he received no reply from Gentle as to whether he understood this order, Major Bozeman repeated it. In direct reply to trial counsel's inquiry, the major testified that to his knowledge the petitioner did not obey this order to sign in hourly.

An airman third class testified that on the evening of October 21st, he saw the appellant in a restaurant outside the limits of the base.

An airman first class testified he was the Charge of Quarters for the 96th Organizational Maintenance Squadron on the evening of October 22d and, as such, he was given instructions that "Airman Gentle was on base restriction and that he would sign in with me every hour on the hour until he went to bed." When he saw the accused that evening about 5:30 p.m., he stated:

"I informed him that he was on base restriction; that he was to sign in with me, and I had a little roster fixed up where he was supposed to sign his name and the time in and

438

the time out, depending on if he were in the barracks or on base, or where he would be."

The appellant did sign in at 5:30 p.m., although not properly, but did not do so at any other time. In fact, the Charge of Quarters related, in response to his inquiry, the appellant informed him he wasn't going to sign in any more and that he was going downtown. The Charge of Quarters did not see the appellant for the remainder of the weekend.

This was the sum total of the evidence relative to these two charges. The remainder of the testimony concerned the other two charges: failure to obey the separate orders of a noncommissioned officer (Charge III) and a commissioned officer (Charge IV) to get out of bed and report for duty at the squadron orderly room on the morning of October 22d.

The convening authority approved the action of the court-martial but the supervisory authority, on the recommendation of his staff judge advocate, disapproved and set aside the convictions on Charges I and III and reduced the sentence. His disapproval of Charge I was based on the ground that it was not legally imposed (United States v Haynes, 15 USCMA 122, 35 CMR 94; Manual for Courts-Martial, United States, 1951, paragraphs 20b and 174b); and of Charge III for insufficiency of evidence that *an order* had in fact been given by the noncommissioned officer.

At the board of review level, that body set aside the conviction on Charge IV because of a lack of substantial evidence to support the findings of guilty; *i.e.*, it found no evidence that the appellant was in any way informed or aware that the order emanated from an officer or, in fact, that he knew of the order.

In his review for the supervisory authority, the staff judge advocate correctly noted that:

". . . A restriction is lawful only when imposed for reasons specifically authorized in the Manual for Courts-Martial; as interpreted by the Court of Military Appeals, the commander's authority to restrict is limited to situations wherein it is in the interest of training, discipline, or medical quarantine, where the continued presence of an accused pending investigation is necessary, where one under charges should not be exposed to temptation of similar misconduct, or where one convicted but not confined is restricted pending final action in the case (see US v Haynes, 35 CMR 94; also see MCM, 1951, par. 20b and 174b)."

In view of the unrebutted and not further explained statement by Major Bozeman as to his reason for restricting the accused (Charge I), brought forth by the prosecution in its case in chief, the staff judge advocate inevitably concluded that since the restriction did not come within the framework of the *Haynes* decision it was unlawful and should be disapproved.

The staff judge advocate in analyzing Charge II, the order of Major Bozeman to the petitioner that he sign in with the Charge of Quarters every hour on the hour as noted above, concluded that, since the major at the time he gave the order reminded Gentle he was *still* restricted to the base, "this order to sign in was obviously designed to enforce a restriction so that the gravamen of the offense was breach of restriction and the maximum punishment for it was that authorized for breach of restriction."[1] The staff judge advocate, however, did not find this order tainted in the same fashion as the initial restriction. Initially, he pointed out that an order from a superior officer requiring the performance of a military duty or act is presumed to be lawful; that the original restriction order dealt only with the normal duty hours and this one became effective at the end of duty hours; that he was not queried as to his reason for the sign-in order, nor was the legality of this order challenged by the defense; and that the intervening incidents which formed the

---

[1] Maximum punishment for this offense is confinement at hard labor for one month and forfeitures of two-thirds pay per month not to exceed one month.

basis of Charges III and IV are of significance in understanding the order. Thus, the staff judge advocate did not believe the order to be unlawful:

"... Since ... [it] was obviously one within the authority of the commander to give and since there is nothing indicating that Major Bozeman's issuance of it was contaminated by unlawful motives or reasons, in the face of this prima facie showing of lawfulness. ..."

On appeal, the Government argued that Charges I and II are not intertwined and that the attempt by the defense to connect the two and to suggest that one implemented the other is pure conjecture. Since the commander never testified as to his reason or purpose in imposing the order, any reason suggested in this appeal can only be speculative; and this method of arriving at such a conclusion could have been avoided if the issue had been raised at the trial level. In addition, Government counsel contended the two charges are separate and distinct, and compliance with one is not dependent upon compliance with the other; that is, the accused could obey the order to sign in hourly and still break the restriction and, conversely, he could disobey the order to sign in hourly and yet not break the restriction.

The Government disagreed with the defense view that the staff judge advocate made a finding of fact with reference to Charge I and that this finding cannot be disturbed. Rather, Government counsel alleged, the determination of this matter by the supervisory authority, upon the advice of his staff judge advocate, was one of law and as such is not binding in this Court.

With reference to the lawfulness of the order to sign in, the Government adopted the rationale of the staff judge advocate and urged its legality on the ground there is nothing in the record which would diminish its lawfulness and it cannot be said to be patently illegal on its face.

While we are mainly concerned with a determination of the legality of the

**440**

order alleged in Charge II, we cannot consider it *in vacuo* in view of our belief that it was closely interwoven with Charge I, and in view of the Government's position thereon. As he testified at trial, Major Bozeman imposed this restriction on the appellant, "So that he would be present for duty during the normal duty hours." Had the accused failed to report for duty, obviously he could have been charged and tried for that offense under the appropriate article of the Code. His being placed in restriction, in order to possibly avoid such an infraction, was clearly improper and well within the four corners of our decision in United States v Haynes, supra. In the cited case, Haynes had twice been convicted by summary court-martial of the offense of wrongful appropriation of property and sentenced to thirty days confinement at hard labor to be served at a nearby air base. In each instance, he had sold the appropriated property in the nearby city. Upon return to the base of his assignment, his squadron commander restricted Haynes to the limits of the base for an indefinite period because he felt that Haynes would continue to do the same thing if the the opportunity presented itself. He believed his action was in the best interest of the Air Force.

In our opinion in *Haynes,* supra, we analyzed the authority of a military commander to impose restrictions on his subordinates and found that, except for the restrictions provided in the newly amended provisions of Article 15, Uniform Code of Military Justice, 10 USC § 815, commanding officer's nonjudicial punishment, no provision of the Code specifically provided for restriction, either punitive or administrative. The Manual for Courts-Martial, however, we noted, contains numerous provisions for the imposition of restriction. In addition to the restrictions that may be imposed by each of the grades of courts-martial, paragraphs 20*b*, 21*d*, and 174*b* provided for such action in lieu of arrest, or in the interest of training, discipline, or medical quarantine. Since the restriction imposed on Haynes did not fall within

any of these categories, we held that it was not lawfully imposed.

So, too, in the case at bar. Here the squadron commander was quite obviously acting in a manner which he felt was in the best interest of the Air Force by restricting Airman Gentle. His reason for so doing was not valid. United States v Haynes, supra.

But what of the supervisory authority's finding—was it one of law, as contended by the Government ▪ ment, or one of fact, as alleged by the defense? The short answer to this is that while his finding that the restriction was unlawful might be considered a legal conclusion, his determination that the reason for the restriction as reflected by the evidence did not come within the provisions of the Code or the Manual was one of fact and we are bound thereby. United States v Justice, 13 USCMA 31, 32 CMR 31; United States v Grice, 8 USCMA 166, 23 CMR 390.

Turning then to the precise question at hand, the legality of the order in Charge II, we are constrained to express some bewilderment at the rationale of the staff judge advocate. He correctly noted the testimony of Major Bozeman to the effect that when he gave this order to the accused he "reminded Airman Gentle that he was still restricted to the base." "Thus [the review continues], this order to sign in was obviously designed to enforce a restriction." Thereafter, however, he concluded, for the reasons noted above, that the order was lawful.

We fail to follow the logic of his reasoning in this regard. We acknowledge the validity of the arguments he advanced and concede that in an appropriate case they would be persuasive. However, once having found as a matter of fact that the "order to sign in was obviously designed to enforce a restriction" currently imposed, and having determined that the restriction was unlawful, it seems clear to us he is bound to the conclusion that an order issued for the sole purpose of implementing an illegal restriction is itself illegal. Where there is no duty to comply with an illegal restriction, there is similarly no duty to comply with a second order affecting it—the second order being merely repetitious of the first.

We agree with the factual determination of the staff judge advocate, and concurrence therein by the ▪ supervisory authority in the absence of a contrary assertion, that the order in Charge II was obviously designed to enforce a restriction. The setting in which the order was given and the specific statement by the commander supports this evidentiary conclusion. The time was during the afternoon of the duty day last preceding a weekend, the first weekend following the imposition of the restriction three days before. While it is true that on that very morning the petitioner had been involved in the difficulties which formed the basis for Charges III and IV, the commander did not allude to this, but merely *reminded* the accused that he was *still restricted to the base.* The staff judge advocate opined and Government counsel argue that the commander was not queried as to his reason for issuing the order. But the record is not entirely silent in this regard. In the absence of a direct inquiry, we submit that his words "reminded" and "still restricted to the base" can lead to no other conclusion but that he was implementing the previously imposed restriction.

The Article under which Charge II was laid requires the order to have been lawful and that an accused must have had a duty to obey it. Article 92(2), Uniform Code of Military Justice, 10 USC § 892; Manual for Courts-Martial, United States, 1951, paragraph 171b. Where the evidence shows that an order was given for an illegal purpose, as in this case to implement or as an addendum to an illegal restriction, the order is illegal (United States v Voorhees, 4 USCMA 509, 16 CMR 83) and no sanctions are provided for disobeying it. United States v Wahl, 4 CMR 767, 775.

In *Wahl,* the accused was placed on restriction pending charges. The order of restriction contained an additional order that during the period thereof,

**441**

the accused was not to indulge in alcoholic beverages. While restricted he drank several highballs at the officer's club on the base and was subsequently charged, along with other offenses, with failure to obey a lawful order under Article 92 of the Code. The board of review held the order not to indulge in alcoholic beverages was, in effect, an order directing the accused not to commit an offense (drunkenness in public —one of the charges for which he was convicted), or at least directing him not to place himself in a position to commit that offense or a similar one.

In a letter opinion attached to *Wahl*, 4 CMR at page 775, the Acting the Judge Advocate General of the Air Force discussed at length the board of review's decision that accused had no duty to obey the order in question. We agree with his comments and quotations as to the necessity for compliance with military orders, and adopt them as our own for the purpose of this opinion.

As in *Wahl*, there is nothing inherently illegal in the order as given in the case at bar, and in another setting we would be constrained to approve the conviction of the appellant. But where, as here, it appears to have been given in an effort to keep the appellant close to his unit, so as to decrease the temptation to violate the illegal order of restriction, it in itself becomes illegal. United States v Haynes, United States v Voorhees, United States v Wahl, all supra.

Since we hold the order to have been illegal, the accused's conviction thereunder must be disapproved.

The decision of the board of review is reversed and the charge is dismissed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

There are sufficient differences between this case and United States v Haynes, 15 USCMA 122, 35 CMR 94, to reach the conclusion that the restriction imposed upon the accused was for a proper purpose. For example, in the *Haynes* case the purpose of the restriction was to deter the accused from going to Misawa City during off duty hours, an act unrelated to his military obligations. Here, the squadron commander's purpose was to make certain the accused "would be present for duty during the normal duty hours." Restraint for that purpose appears to be reasonably calculated to insure discipline through regular attendance at places of duty. From that standpoint, the restraint on the accused's freedom of movement is authorized by the Manual for Courts-Martial. See Manual for Courts-Martial, United States, 1951, paragraph 174b. In any event, acceptance of the majority's conclusion that the restriction was illegal does not require a holding that the commander's subsequent order to the accused to sign in at stated times is also illegal.

The order, in my opinion, is legal. The majority misconstrue the staff judge advocate's advice. He did not say the order to sign in was an implementation of the illegal restriction. On the contrary, he carefully analyzed the separate circumstances of the order, and concluded they were different from those surrounding the initial restriction. When he spoke of the purpose of the order he did not say, as the majority construe his advice to say, that it was designed to enforce the already existing restriction. Instead, he argued that the order *amounted* to "a restriction"; that is, it had the effect of a restriction. Therefore, it was important to determine whether the order, operating as a restriction, was "tainted in the same fashion as the initial restriction."[1] The staff judge advocate concluded the order was not so tainted.

---

[1] In pertinent part, the text of the post-trial advice is as follows:
". . . A restriction is lawful only when imposed for reasons specifically authorized in the Manual for Courts-Martial; as interpreted by the Court of Military Appeals, the commander's authority to restrict is limited to situations wherein it is in the interest of training, discipline, or medical quarantine, where the continued presence of an accused pending investigation is necessary, where one under charges should not be

He gave several reasons for this conclusion. One of these is the fact that before the order was given, the accused became involved in the incidents which resulted in Charges III and IV. A restriction imposed pending investigation of charges is proper. Manual for Courts-Martial, supra, paragraph 20*b*.

This construction of the staff judge advocate's analysis makes his conclusion compatible with his reasons. To construe the advice otherwise, makes it impossible, as the majority observe, to "follow the logic of his reasoning." I prefer sense to nonsense.

If I am wrong in my choice as to the true meaning of the staff judge advocate's advice, I still cannot accept the majority's view of it. I do not consider the staff judge advocate's statement, that the order "was obviously designed to enforce a restriction," to be a finding of fact. The staff judge advocate himself expressly rejected any factual connection between the order and the initial restriction. Among other things, he noted the different periods of time to which the two applied. He observed the initial restriction related only to normal duty hours, whereas the order applied "at the end of normal duty hours," and extended to weekends. In my opinion, the statement as to the purpose of the order is, at best, a conclusion; and it is a conclusion contra to the underlying facts recited in the advice.

The record demonstrates that the accused's commander sought to make the accused more amenable to military discipline. To achieve his purpose, he took two actions with respect to the accused. Each imposed a different requirement upon him; and each applied to different periods of time and to different conditions. In my opinion, the invalidity of one of the actions did not *ipso facto* invalidate the other.

I would affirm the decision of the board of review.

---

exposed to temptation of similar misconduct, or where one convicted but not confined is restricted pending final action in the case (See US v Haynes, 35 CMR 94; also see MCM, 1951, par. 20b and 174b) . . . .

". . . Here again, though, the commander's testimony as to the interview on 22 October is to the effect that he reminded Gentle that he was still restricted to the base and also gave him the order alleged. Thus, this order to sign in was obviously designed to enforce a restriction so that the gravamen of the offense was breach of restriction and the maximum punishment for it was that authorized for breach of restriction. . . . As a result, is this order tainted in the same fashion as the initial restriction? I think not. . . . It must be remembered that the Squadron Commander's testimony that his reason for restricting the accused was to insure his presence for duty during normal duty hours dealt only with the initial imposition of restriction on 19 October and that he was not queried as to his reason for issuing the order on 22 October, nor was the legality of this order challenged by the defense. Of significance, too, was the accused's involvement in the intervening incident of the morning of 22 October which is the subject of Charges III and IV and their Specifications. Also of interest and militating against a conclusion that the commander's motive on 22 October was the same as that on 19 October is the fact that the 22 October order became effective at 1700 hours on Friday afternoon, at the end of normal duty hours, on the day preceding a weekend. Certainly, 'a military member is not generally free to come and go as he chooses' and the importance of obedience to orders in the military establishment is not arguable (See US v Haynes, supra). Since the order involved in the Specification of Charge II was obviously one within the authority of the commander to give and since there is nothing indicating that Major Bozeman's issuance of it was contaminated by unlawful motives or reasons, in the face of this prima facie showing of lawfulness, I do not feel it proper to presume that it was unlawful."