UNITED STATES, Appellee

v

ROBERT B. STEWART, Private,
U. S. Army, Appellant

20 USCMA 272, 43 CMR 112

No. 23,123

January 15, 1971

*Captain Bernard J. Casey* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Frank B. Stahl, Jr.*

*Captain John F. Cooney, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain Benjamin G. Porter.*

## Opinion

DARDEN, Judge:

Before a general court-martial at Fort Lewis, Washington, the appellant pleaded guilty to willful disobedience of a lawful order of a superior commissioned officer, in violation of Article 90, Uniform Code of Military Justice, 10 USC § 890. After earlier appellate review, his sentence now stands as a bad-conduct discharge, confinement at hard labor for eighteen months, and total forfeitures.

Before the appellant pleaded guilty his counsel made an offer of proof in an out-of-court hearing (1) that at the time of the offense the appellant as a result of religious training and belief was conscientiously opposed to war in any form and (2) that the appellant's application for a conscientious objector discharge under the provisions of Army Regulation 635–20 was "unlawfully, arbitrarily, [and] capriciously denied." The law officer ruled that he would not determine whether the appellant was, in fact, a conscientious objector and he refused to hear any evidence on either part of the dual offer of proof. The

appellant then pleaded guilty in compliance with a pretrial agreement. This Court granted appellant's petition to consider whether the law officer erred by his refusal to litigate the Secretary of the Army's denial of the appellant's request for discharge as a conscientious objector.

During presentence proceedings the appellant testified about his conscientious objections. Before his induction the Selective Service System classified him I-A-O, a noncombatant status. Consequently, he was trained for nonprofessional medical service. He testified that although he first believed this service would not conflict with his conscience, he later was convinced that by preserving the health of members of the Army he was indirectly supporting a combat mission in violation of his religious principles.

This Court has held that while even a voluntary and informed plea of guilty does not necessarily preclude appellate review of the denial of an accused's constitutional rights, the rights that are not so waived must be unrelated to the admissions of fact contained in the guilty plea. United States v Hamil, 15 USCMA 110, 35 CMR 82 (1964). In this case, however, we decline to hold that the guilty plea waived the issue involved, since some of the law officer's comments supported an erroneous impression by the civilian individual defense counsel that because of the statutory provisions for appellate review of military trials, a guilty plea in this instance would not waive his claim that the discharge application had been arbitrarily and unreasonably denied. When a defendant weighs ▮▮▮▮▮ ▮ his remedies and admits his guilt, he does so under the law then existing and assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction will not be set aside unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not a knowing and intelligent act. McMann v Richardson, 397 US 759, 25 L Ed 2d 763, 90 S Ct 1441 (1970). In this case, though, it is obvious that ▮▮▮▮▮ ▮ the counsel recommended the guilty plea only because of his understanding that he would not waive appellate review of his motion on the denial of the conscientious objector claim. The counsel indicated his awareness that in civil courts a guilty plea waives all nonjurisdictional defects, but because of statutorily required appellate review in military cases he was advising a guilty plea under a pretrial agreement, with the obvious expectation that his issue was being preserved for appeal. The law officer expressed his uncertainty over whether the accused could providently plead guilty, with an implicit recognition by the plea that the order he violated was lawful, and still preserve the issue on appeal. When counsel responded with the statement that under the then state of the law his defenses were irrelevant but "[W]e think the law is wrong and that's why we attempted to preserve our record," the law officer responded, "Well, yes, as I said, I want you to do that. I encourage you to, because that's what you're here for." Consequently, we proceed to consider the granted issue.

This case was tried before publication of this Court's decision in United States v Noyd, 18 USCMA 483, 40 CMR 195 (1969). In Noyd, the law officer judged the lawfulness of the denial by the Secretary of the Air Force of an application for discharge as a conscientious objector as this denial affected the lawfulness of an order later given to the accused in that case. The Noyd opinion declared that: "If the Secretary's decision was illegal, the order it generated was also illegal." Id., at page 492. As Judge Ferguson pointed out in his concurrence in that decision, it was clear from the record that the accused in Noyd was not entitled to the relief that he sought from the Secretary and the above quotation was unnecessary for the holding in Noyd.

The questions we face then are (a) whether the appellant's conscientious

objection to military service may serve as a defense to the crime with which he is charged thus rendering his guilty plea improvident, and (b) whether the law officer's refusal to pass on his contention that the Secretary arbitrarily and unlawfully denied his application for discharge was prejudicially erroneous.

The first question may be quickly decided. A person conscientiously opposed to war does not have a constitutional right to be exempted from induction. Provisions for deferment of Selective Service registrants result not from a constitutionally protected right but from the exercise of legislative grace. United States v MacIntosh, 283 US 605, 75 L Ed 1302, 51 S Ct 570 (1931); Parrott v United States, 370 F2d 388 (CA 9th Cir) (1966); Richter v United States, 181 F2d 591 (CA 9th Cir) (1950), certiorari denied, 340 US 892, 95 L Ed 647, 71 S Ct 199 (1950); United States v Noyd, supra; cf. United States v Sisson, 297 F Supp 902 (D Mass) (1969), appeal dismissed for lack of jurisdiction, 399 US 267, 26 L Ed 2d 608, 90 S Ct 2117 (1970).

Congress has provided such protection for conscientious objectors under the Military Selective Service Act of 1967, Title 50 Appendix, United States Code, Supp. IV, sections 454(a), 456(j). The Act, however, applies only to prospective inductees, and permits them to interpose a claim of misclassification as a defense to charges of willful refusal to submit to induction or to test refusal of an exemption by habeas corpus. One who does not assert his right to an exemption loses it upon induction. United States v Scheunemann, 14 USCMA 479, 34 CMR 259 (1964).

As we noted in United States v Noyd, supra, the Department of Defense, in a similar manner, has determined to extend relief from military service or duties inconsistent with the conscientious beliefs of one who is already in the armed services and who has developed such scruples after beginning his military career. Department of Defense Directive, No. 1300.6, August 21, 1962, revised May 10, 1968. It was under these regulations, further implemented by regulations of the military departments, that accused applied for his discharge, was refused, and now claims that such refusal was based on the arbitrary and capricious action of the Secretary of the Army.

Since a civilian registrant in the Selective Service System has no constitutional right to be exempted from induction *a fortiori* a member of the armed forces has no constitutional right to be discharged because of such conscientious objection.

Nevertheless, some decisions by Article III courts hold that those courts have jurisdiction to entertain an application for extraordinary relief and to pass on whether the administration of the discretionary regulation provides due process of law. Brown v McNamara, 387 F2d 150 (CA 3d Cir) (1967); Hammond v Lenfest, 398 F2d 705 (CA 2d Cir) (1968); and In re Kelly, 401 F2d 211 (CA 5th Cir) (1968). Other Article III courts, however, have taken the position that they should refuse to accept subject matter jurisdiction to pass on the factual adequacy of decisions by defense officials on whether a member of the armed forces ought to be discharged. They have thought the exercise of such jurisdiction could unduly disrupt the operation of the armed forces or that it would be contrary to the doctrine of separation of powers. Orloff v Willoughby, 345 US 83, 97 L Ed 842, 73 S Ct 534 (1953); Harmon v Brucker, 243 F2d 613, 619 (CA DC Cir) (1957), reversed on other grounds, 355 US 579, 2 L Ed 2d 503, 78 S Ct 433 (1958).

Brown v McNamara, supra, and In re Kelly, supra, have expressed the view that claimed conscientious objection can be raised as a defense to a military prosecution for refusing to obey orders. But claimed conscientious objection or a Secretary's denial of a discharge application by a conscientious objector is a defense to a court-martial proceeding only if the Constitution, a statute, or a

regulation so provides. In this instance there is no constitutional right to refuse military orders because of conscientious objection; no statutory provision makes conscientious objection or a Secretary's improper denial of a conscientious objector's discharge application a defense in a military trial and the regulation permitting submission of discharge applications by in-service conscientious objectors contains no authority for the litigation of this issue at a court-martial.[1]

If in a collateral way a court-martial can declare an order is illegal because under a discretionary regulation the Secretary has denied an application for a discharge, the Secretary would have no practical alternative except to discharge the member. A member of the armed forces who could with impunity refuse any order is more than useless. Such a procedure would transfer the authority to decide who should be discharged from a military department to a court that is without legislative authority to decide such questions. This would clearly conflict with the statutory grant of authority to administer the armed forces.

Whether the Secretary's action on a conscientious objector discharge application is reviewable by courts established under Article III of the Constitution is not for us to decide. I would hold only that action by the ▆▆▆▆▆ ■ Secretary of a military department on such an application, even if erroneous, does not operate to end the obligation of a member of the armed forces to obey orders that are otherwise lawful. Such an obligaiton does not end until the member is separated by competent orders. An *ex parte* determination by a member that his rights have been denied is no more a justifiable excuse for refusing to comply with an otherwise lawful order than

is a member's contention that he has been unlawfully inducted a defense to an unauthorized absence (United States v Scheunemann, supra), or a prisoner's belief that his sentence is irregular or voidable a defense to prosecution for escape. Aderhold v Soileau, 67 F2d 259 (CA 5th Cir) (1933); Godwin v United States, 185 F2d 411 (CA 8th Cir) (1950); Bayless v United States, 141 F2d 578 (CA 9th Cir) (1944). "The idea that a soldier's tenure in the service may be terminated by him at will, or that a selectee may enter the army on a trial basis and stay if he likes it or leave if he does not, is wholly foreign to the military concept in time of war, and diametrically opposed to the necessary policy of any sovereign." Mayborn v Heflebower, 145 F2d 864, 866 (CA 5th Cir) (1944).

The parallel drawn in *Noyd* with the situation presented in United States v Voorhees, 4 USCMA 509, 16 CMR 83 (1954), was inapposite. The latter case dealt with charges alleging directly that an Army regulation was violated and willful disobedience of an order to comply with the regulation. In *Noyd*, however, and again here, the charges bear no relationship to the regulations regarding treatment of conscientious objectors. These regulations make no provision for accused's interposition of conscientious objection as a defense, nor do thy provide for a military judicial review of Secretarial action thereunder. In short, they have no relevance to the charges under consideration.

From the foregoing, I conclude that the law officer properly refused to entertain accused's motion to inquire into the manner in which his application for discharge was processed. His subsequent plea of guilty was in all respects provident and voluntary, and the defense attack on it must be rejected.

---

[1] It is important to note that we do not here deal with any conflict between an order given the accused while his application was pending and the regulatory provision prohibiting the accused's assignment to duties inconsistent with his professed beliefs. United States v Noyd, 18 USCMA 483, 492, 40 CMR 195 (1969). In such an instance, the order would contravene a departmental regulation and would, therefore, be itself illegal and disobedience thereof unpunishable. Cf. United States v Gentle, 16 USCMA 437, 37 CMR 57 (1966).

276

The decision of the United States Army Court of Military Review is affirmed.

QUINN, Chief Judge (concurring in part and dissenting in part):

I disagree with the repudiation of United States v Noyd, 18 USCMA 483, 40 CMR 195 (1969). In my opinion an order by a subordinate military authority, which has its origin in, and takes its content from, an illegal action by a service Secretary is not a lawful order, and cannot be the foundation for a charge of disobedience of a "lawful command," as provided by Article 90(2), Uniform Code of Military Justice, 10 USC §890. This principle is inherent in United States v Voorhees, 4 USCMA 509, 16 CMR 83 (1954), and in Noyd, supra; it was also recognized by the Court of Appeals for the Third Circuit in Brown v McNamara, 387 F2d 150 (1967). As the supreme court of the military justice system, this Court exercises primary responsibility for determination of the legality of an order alleged as a basis for court-martial prosecution. I do not believe that we should deny the responsibility entrusted to us by Congress in this important area, and relegate an accused to a proceeding in a civilian district court for relief from an illegal order.

I concur in the affirmance of the accused's conviction because, despite the law officer's misunderstanding of the law, the accused's plea of guilty and his testimony during the sentence proceeding demonstrate no abuse of discretion or denial of due process in the Secretary's disapproval of the application for separation from the service. Compare United States v Goguen, No. 421998 (ACMR September 2, 1970), Department of the Army Pamphlet No. 27–70–14, page 1, petition for review granted by this Court (Docket No. 23,-588) December 24, 1970.

FERGUSON, Judge (dissenting):

I dissent.

I disagree with Judge Darden's determination that the law officer properly refused to entertain accused's motion to inquire into the manner in which his application for discharge was processed, for the reasons set forth by the Chief Judge in his separate opinion in this case. See United States v Noyd, 18 USCMA 483, 40 CMR 195 (1969); United States v Voorhees, 4 USCMA 509, 16 CMR 83 (1954); Brown v McNamara, 387 F2d 150 (CA 3d Cir) (1967).

I also disagree with the majority's disposition of this case, in which my brothers affirm the accused's conviction but for different reasons. Since Judge Darden concluded that the law officer properly refused to inquire into the legality of the Secretary's denial of the accused's application for discharge, his affirmance of the conviction is based on a finding that the accused's plea of guilty was in all respects provident and voluntary. The Chief Judge affirmed on the basis of a decision by the United States Army Court of Military Review (United States v Goguen, No. 421998 (ACMR September 2, 1970)). Goguen (which case has not yet proceeded through all stages of appellate review —Article 67(b), Uniform Code of Military Justice, 10 USC § 867), however, is distinguishable from the case at bar for two reasons. In Goguen, the accused was merely ordered to put on his uniform, while in this case the accused was ordered to " 'put on your uniform *to continue your movement to your overseas destination in compliance with your written overseas movement orders' "* (emphasis supplied), a quite different order when considered in the context of the accused's application for discharge as a conscientious objector. The second basis for distinguishing Goguen is the fact that the order to *put on your uniform* may well have been improperly brought under Article 92, Code, supra, 10 USC § 892. United States v Bratcher, 18 USCMA 125, 39 CMR 125 (1969). A member of the armed forces is, by virtue of his status as a soldier, required to wear the uniform of the service of which he is a member. His failure to do so at the proper times is a recognized violation of the Code (Article 134, 10 USC §934), punishable by confinement at hard labor not to exceed one month and forfeitures not to exceed

two-thirds pay for one month. Charging this as an offense under Article 92 is of questionable legality. United States v Bratcher, supra. In fact, the dissenting member of the Court of Military Review in *Goguen* would have held that the order to put on the uniform was illegal on the basis of *Bratcher*.

Since I believe that the law officer erred to the substantial prejudice of the accused by refusing to entertain the accused's motion to inquire into the manner in which his application for discharge was processed, I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered.