UNITED STATES, Appellee

v

DON A. LENOX, Private First Class, U. S. Army, Appellant

21 USCMA 314, 45 CMR 88

No. 24,336

April 21, 1972

*Captain Richard A. Cooper* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr.,* and *Captain Norman L. Blumenfeld.*

*Captain Richard A. Karre* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway* and *Captain Richard L. Menson.*

## Opinion of the Court

DUNCAN, Judge:

The accused was inducted into the United States Army on October 11, 1968. At all times while in the Army, Lenox was deeply concerned with his adjustment to the service and its mission. He came to believe that he could not in conscience continue to participate in what he described as a "system that uses the impersonal destruction of people as a method of obtaining its objectives." He stated that his belief became crystallized during the latter part of his training at Fort Gordon. After the accused was transferred to the United States Army Overseas Replacement Station, Oakland, California, for reassignment to duty in Vietnam, on May 7, 1969, he filed an application for discharge pursuant to AR 635-20, January 22, 1969.

The United States District Court of the Northern District of California on July 9, 1969, denied appellant's petition for a writ of habeas corpus praying for an order of separation from the Army.

The charges in the case before us stem from incidents alleged to have occurred on July 23, 1969. Following his conviction by general court-martial for one specification each of missing movement through design and willful disobedience of a lawful order from his superior commissioned officer to report for transportation to Vietnam, in violation of Articles 87 and 90, Uni-

314

form Code of Military Justice, 10 USC §§ 887 and 890, respectively, the accused was sentenced to a bad-conduct discharge, forfeiture of $80.00 per month for six months, and confinement at hard labor for a like period. The findings and sentence have been approved without change. We granted review on the following issue:

Whether the military judge and the Secretary of the Army utilized an improper standard in rejecting the accused's claim of conscientious objection.

At trial and prior to pleading, individual defense counsel moved for a dismissal of all charges and specifications on the ground that certain procedural requirements had not been adhered to in processing appellant's application for discharge as a conscientious objector and that the application had been erroneously denied by the Secretary of the Army. He contended on this basis that the order issued to effect transportation of the appellant to Vietnam was, therefore, illegal. It was counsel's assertion that the Army's administrative determination was without a substantial basis in fact.

In ruling on the motion the military judge held, initially, that the procedural requirements of AR 15–6, August 12, 1966, did not apply in this instance. With regard to the second basis for the motion, the military judge declared:

". . . With respect to the accused's contention that the Department of the Army erroneously denied his application for discharge, the court finds that the Department of the Army did have a basis in fact for denial of the accused's application for discharge as a conscientious objector. Considering the file as a whole, there is sufficient evidence to support a determination that the application is based upon a personal moral code and not upon sincere religious beliefs. For these reasons, the motion for dismissal of the charges and specifications is denied."

The same motion and legal argument again was raised by defense counsel at the conclusion of the prosecution's case and again denied by the military judge. At that point in the trial, counsel's efforts to raise the issues as an affirmative defense were rebuffed by the military judge who ruled that he would consider it only in extenuation and mitigation. In response to a defense request, the military judge, after announcing his findings on the charges and specifications, made a special finding as to the legality of the Department of the Army's denial of the appellant's application for discharge as a conscientious objector. The ruling was identical with that quoted above.

Appellate defense counsel contend that both the Secretary of the Army and the military judge erred in their determination that "a personal moral code" was not a proper basis for consideration of a claim of conscientious objection. In support they cite AR 635–20, January 22, 1969; United States v Seeger, 380 US 163, 13 L Ed 2d 733, 85 S Ct 850 (1965) ; and Welsh v United States, 398 US 333, 26 L Ed 2d 308, 90 S Ct 1792 (1970). The Secretary's error, allegedly, resulted in the subsequent orders being illegal. Contrariwise, appellate Government counsel aver that since *Welsh* was decided after the Secretary's determination in this case, its holding does not apply. Assuming, *arguendo*, *Welsh* does apply, they maintain that the appellant is not benefited because the holding in both *Seeger* and *Welsh* did not alter or change the existing law.

Recently, the Supreme Court of the United States decided Parisi v Davidson, 405 US 34, 31 L Ed 2d 17, 92 S Ct 815 (1972). Parisi, a member of the United States Army, applied for discharge as a conscientious objector. His application was denied by the Department of the Army on the grounds that his professed beliefs had become fixed prior to entering the service and that his opposition to war was not truly based upon his religious beliefs. He then applied to the Army Board for Correction of Military Rec-

ords (ABCMR) for administrative review of that determination. Shortly after the filing of the application with ABCMR, Parisi filed a petition for habeas corpus in Federal District Court, claiming that the Army's denial of his conscientious objector application was without basis in fact. He also applied for but did not receive a preliminary injunction to prevent his transfer out of the jurisdiction of the District Court and to prohibit further training preparatory to being transferred to Vietnam. However, that Court retained jurisdiction pending a decision by the ABCMR and enjoined Army authorities from requiring the petitioner to participate in activity or training beyond his current noncombatant duties. The ABCMR denied Parisi's application. Parisi received orders and reported to Fort Lewis, Washington, where he refused to obey an order to board a plane for Vietnam. At a court-martial he was convicted for violating Article 90, Code, supra. The Federal District Court ordered the Army to show cause why the pending writ of habeas corpus should not issue. On the Government's motion, the District Court entered an order deferring consideration of the petition until final determination of the criminal charge then pending in the military court system. The Court of Appeals affirmed; the Supreme Court reversed.

The *Parisi* case examined the relationship between Article III courts and the courts in the military system of justice, and held that neither the doctrine of exhaustion of alternative remedies nor the doctrine of comity required a stay of the District Court proceedings on the petition for a writ of habeas corpus Moreover, Mr. Justice Stewart writes, at page —:

". . . For the writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces."

In reaching the *Parisi* decision the Court declined to defer action on a basis of comity. The Court's opinion further states, on page 42:

". . . [W]e are not persuaded that such relief would be even potentially available, much less that it would be either prompt or certain.

"Courts-martial are not convened to review and rectify administrative denials of conscientious objector claims or to release conscientious objectors from military service. They are convened to adjudicate charges of criminal violations of military law. It is true that the Court of Military Appeals has held that a soldier charged in a court-martial with refusal to obey a lawful order may, in certain limited circumstances, defend upon the ground that the order was not lawful because he had wrongfully been denied an administrative discharge as a conscientious objector. United States v Noyd, 18 USCMA 483, 40 CMR 195 [1969]. The scope of the *Noyd* doctrine is narrow, United States v Wilson, 19 USCMA 100, 41 CMR 100 [1969], and its present vitality not wholly clear, United States v Stewart, 20 USCMA 272, 43 CMR 112 [1971]."

Although what follows hereinafter exceeds the specified purview of the granted issue, we feel impelled to exercise our prerogative and reexamine the holding in United States v Noyd, 18 USCMA 483, 40 CMR 195 (1969). As we read Parisi v Davidson, supra, reread United States v Stewart, 20 USCMA 272, 43 CMR 112 (1971), and consider the briefs and oral arguments in the case before us, we see our duty to make clear our position concerning the availability or nonavailability of the so-called *Noyd* defense. Obviously, this is an area of our jurisprudence that is bothersome to members of the bench and bar and all who deal with military justice.

We have set forth certain facts and conclusions from Parisi v Davidson, supra, at greater length than ordinarily would be our practice since that case furnishes a well-marked starting point

for our revisitation of the *Noyd* and *Stewart* cases.

In *Noyd*, supra, as the writer of the instant opinion views the majority opinion in that case, this Court apparently decided that, within the framework of the pertinent regulation, unlawful action by the Secretary on an application for discharge as a conscientious objector could invalidate a dependent military order to the applicant. As stated in *Noyd*, at page 492:

". . . If the Secretary's decision was illegal, the order it generated was also illegal. See United States v Gentle, 16 USCMA 437, 37 CMR 57 [1966]."

We need not dwell at length on the background of AR 635–20. Suffice to note it was issued in implementation of a Department of Defense Directive (No. 1300.6, May 10, 1968, paragraph IV) providing that claims of conscientious objection by servicemen be judged by the same standards as those utilized by the Selective Service System in construing section 456(j) of the Military Selective Service Act of 1967, 50 USC App, Supp V. The pertinent portion of this section of the United States Code provides:

"(j) Nothing contained in this title . . . shall be construed to to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief,' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."[1]

At the time the appellant's application for discharge was submitted (May 7, 1969), AR 635–20, dated January 22, 1969, provided in part:

"1. *Purpose.* This regulation sets forth the policy, criteria, and pro-

cedures for disposition of military personnel who, by reason of religious training and belief, claim conscientious objection to participation in war in any form.

· · · · ·

"3. *Policy.* *a.* Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.

b. . . . Requests for discharge after entering military service will not be accepted when—

· · · · ·

"(3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code."

It is apparent that the language of AR 653–20 is almost precisely that of the statutory enactment by which the Selective Service System is governed.

AR 635–20 also provides:

". . . [A]n individual who applies for discharge based on conscientious objection will be retained in his unit and assigned duties providing the minimum practicable conflict with his asserted beliefs *pending a final decision on his application.*" [Emphasis supplied.]

Upon appellate review before this Court, it has been determined that under AR 635–20 there is no constitutional duty to grant a serviceman the right to be separated from the service or to demand reassignment to duties unrelated to combat to satisfy his scruples of conscience. United States v Noyd, supra, at page 491; United States v Stewart, supra, at page 275. In the case of Welsh v United States, supra, in reviewing a conviction for refusing to submit to induction into the armed forces the Court did not bottom its decision on a constitutional basis but on an interpretation of the Universal Military Training and Service Act of 1948.[2]

---

[1] The 1971 reenactment (85 Stat 348, Public Law 92–129) contains this exact verbiage.

[2] In Welsh v United States, 398 US 333, 335, 26 L Ed 2d 308, 316, 90 S Ct 1792 (1970), it is stated:

Keeping in mind the above facts, regulations, statutes, and Court decisions, we turn to the more controversial aspects of the *Noyd* doctrine examined in the light of the facts of the case before us.

Lenox had been denied discharge as a conscientious objector and did not apply for further relief to the ABCMR. Likewise, after his petition for a writ of habeas corpus had been denied, no appeal from that judgment was perfected, all of which occurred prior to the date of the alleged offenses.

Furthermore, it is interesting to note the expressed philosophical posture appellant had assumed at the time of his application for discharge. Appellate Exhibit 6, a part of his application for discharge under AR 635–20, relates:

"Therefore, I cannot:

"(1) Take an active part in war.

"(2) Work in a noncombatant position, as one's duty there is to increase the combatants' effectiveness in destruction.

. . . . .

"Thus, I cannot in conscience commit myself to obeying all 'lawful' orders within a system that uses the impersonal destruction of people as a method of obtaining its objectives. *Even my wearing of the uniform represents to me participating approval of both the methods and objectives.*" [Emphasis supplied.]

Here, as in *Noyd*, reasoning through the theory of defense is extremely troublesome. First, AR 635–20 provides for two kinds of relief: a discharge and also that, pending a final decision on an application, an applicant is to be assigned duties providing the minimum practicable conflict with his asserted beliefs. On the date of the alleged offenses the appellant had no application *pending* final decision. The application had been denied and further administrative relief was not requested; also, the judgment of the Federal District Court was not on appeal. The Army was not impressed with a duty to give appellant specially assigned duties. Therefore, it is illogical to deduce that appellant had a cognizable legal right to certain duties and concomitantly a legal right to refuse to perform other duties under AR 635–20. Obviously, orders to proceed to Vietnam were most onerous of all to Lenox; nevertheless, if logic is to be heeded, his argument must necessarily be grounded on a claimed justiciable right to refuse obedience to all Army orders since he had been wrongfully retained in the military service.

Assuming the sincerity of his stated proclivity against even wearing the uniform as set forth hereinabove, it would appear that he would not be of the emotional discipline to obey any order. In its bare ratiocination appellant's position narrows to a requested adjudication that he is no longer a member of the Army since the date that his application for discharge was, in his judgment, wrongfully denied. Looking further, if that argument has merit, then the jurisdiction of courts of the military system of justice is questionable. We are unable to agree with the theory of appellant's defense.

After the *Noyd* decision, this Court decided United States v Stewart, supra. We believe Judge Darden accurately stated the posture of the law in *Stewart*, at pages 275 and 276:

". . . But claimed conscientious objection or a Secretary's denial of a discharge application by a con-

". . . We granted certiorari chiefly to review the contention that Welsh's conviction should be set aside on the basis of this Court's decision in United States v Seeger, 380 US 163, 13 L Ed 2d 733, 85 S Ct 850 (1965). . . . For the reasons to be stated, and without passing upon the constitutional arguments that have been raised, we

vote to reverse this conviction because of its fundamental inconsistency with United States v Seeger, supra."

However, one member of the Court, Mr. Justice Harlan, concurring in the result, 398 US, at page 344, based his concurrence on constitutional principles.

scientious objector is a defense to a court-martial proceeding only if the Constitution, a statute, or a regulation so provides. In this instance there is no constitutional right to refuse military orders because of conscientious objection; no statutory provision makes conscientious objection or a Secretary's improper denial of a conscientious objector's discharge application a defense in a military trial and the regulation permitting submission of discharge applications by in-service conscientious objectors contains no authority for the litigation of this issue at a court-martial."

Action by the Secretary of a military department on such an application, even if erroneous, does not operate to end the obligation of a member of the armed forces to obey orders that are otherwise lawful.

Contrary to the *Noyd* rationale, we do not deem the order for movement or the order to board the plane to have been tainted with illegality and generated by the alleged illegality of the Secretary's decision. *Id.*, at page 492. Such circumstances do not provide fact or inference that one action *generated* the other. The generation of orders concept would appear to be nonexclusive of any order given subsequent to the Secretary's action, therefore, such a hypothesis would result in a member actually being in the service, but who could not be the recipient of any lawful order. This we cannot accept as law.

Critics of our decision in the case at bar may point out that in the Article III courts a defense of wrongful denial of status as a conscientious objector may be laid against prosecution for failure to report for induction ordered under the Military Selective Service Act. It may be urged that since the defense is available in a criminal action, why not here? The answer lies in the statute which makes proper such a de-fense. Military Selective Service Act of 1967, supra, §§ 454(a) and 456(j).

In our view nothing we have decided herein visits harm on the accused's right to fully litigate the matter of his continued service based upon his beliefs. It is the use of the attempted defense that we view nonavailable. In Parisi v Davidson, supra, Article III courts have been ruled to provide a forum in a proper case. Whether this Court can afford relief upon direct application for that purpose, we do not decide in this appeal. Moreover, we are aware of the other interesting question the factual situation the case at bar presents—the effect of the *Welsh* decision in determinations made by the Secretary of the Army prior to its decision; whether there is a basis in fact before the Army to justify its denial of Lenox's application—however, our conclusions set forth above are such that that question need not be decided.

After the Secretary of the Army has denied an accused's application for discharge from military service as a conscientious objector and when no application for discharge as a conscientious objector was pending on the date of the alleged offenses, a claim of error in the Secretary's decision cannot be interposed as a defense to charges of missing movement and willful disobedience of a lawful order.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge DARDEN concurs.

QUINN, Judge (dissenting, but concurring in the result):

As indicated in my separate opinion in United States v Stewart, 20 USCMA 272, 43 CMR 112 (1971), I adhere to the *Noyd* decision, but I conclude that the trial judge's ruling was supported by sufficient evidence. I, therefore, join in affirming the decision of the Court of Military Review.