UNITED STATES, Appellant

v.

Willie L. JOHNSON, III, Specialist
U.S. Army, Appellee.

No. 93–5024.
CMR No. 9100315.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 1, 1996.

Decided Sept. 27, 1996.

For the Accused: *Captain Stanley M. Bell* (argued); *Major Fran W. Walterhouse* and *Major Roy H. Hewitt* (on brief); *Colonel Stephen D. Smith* and *Captain Michael E. Hatch.*

For the United States: *Major Lyle D. Jentzer* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel James L. Pohl, Major Kenneth T. Grant, Captain Louis E. Peraertz* (on brief); *Captain John W. O'Brien; Colonel John M. Smith* and *Lieutenant Colonel Eva M. Novak.*

*Opinion of the Court*

EVERETT, Senior Judge:

At his original general court-martial, officer members convicted Johnson, contrary to his pleas, of missing movement through design and willful disobedience of a superior commissioned officer, *see* Arts. 87 and 90, Uniform Code of Military Justice, 10 USC §§ 887 and 890, respectively. They sentenced him to a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. After the convening authority had approved these results, the Court of Military Review, in an unpublished opinion, held that Johnson had not received effective assistance of counsel; therefore, the court below set aside the find-

ings and sentence and authorized a rehearing.

The ensuing general court-martial—this time, comprised of a military judge sitting alone—again convicted Johnson of these offenses, but sentenced him to no punishment. The convening authority approved these results, but a unanimous panel of the Court of Military Review set aside the findings and sentence and dismissed the charges. The court below held that, at the time of the movement in question, Johnson had been ineligible for overseas deployment under certain Army regulatory provisions. Consequently, he had been under no legal obligation to make the scheduled movement or to comply with his commander's order to deploy. 37 MJ 982, 986 (1993). The Court denied the Government's motion for reconsideration.

In due course, the Judge Advocate General sent the case to this Court, asking us to answer the following questions, *see* Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989):

### I

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW WHEN IT FOUND THAT IT HAD CONTINUING APPELLATE JURISDICTION OVER [JOHNSON'S] CASE DESPITE AN ADJUDGED SENTENCE THAT DID NOT INCLUDE A PUNITIVE DISCHARGE OR CONFINEMENT FOR ONE YEAR OR MORE.

### II

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW WHEN IT RULED THAT DSPM [DESERT SHIELD PERSONNEL MESSAGE] 31 WAS AN UNLAWFUL CHANGE TO A REGULATION EVEN THOUGH AR 25–30 INDICATES THAT THE PROPONENT OF AR 600–43 CORRECTLY PUBLISHED THE MESSAGE.

### III

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW WHEN IT SET ASIDE THE FINDINGS IN VIEW OF THIS HONORABLE COURT'S ESTABLISHED PRECEDENT THAT VIOLATION OF A CONSCIENTIOUS OBJECTOR REGULATION DOES NOT CONFER A DEFENSE TO A MEMBER OF THE ARMED FORCES AND THAT CONSCIENTIOUS OBJECTION IS NOT A CONSTITUTIONAL RIGHT. *SEE UNITED STATES V. LENOX,* 21 USCMA 314, 45 CMR 88 (1972). ALSO, *SEE GENERALLY UNITED STATES V. COOPER,* 35 MJ 417 (CMA 1992).

Now, we answer the first certified question in the negative: The Court of Military Review did not err in finding continuing jurisdiction over this appeal, *see* Art. 66(b)(1), UCMJ, 10 USC § 866(b)(1); *United States v. Boudreaux,* 35 MJ 291 (CMA 1992). Reaching the substantive issues, we answer the third question in the affirmative: In light of *United States v. Lenox,* 21 USCMA 314, 45 CMR 88 (1972), the court below did err in concluding that the processing of Johnson's conscientious objector application afforded him a defense against his obligation to deploy, even if orders to do so violated service regulations concerning conscientious objection. *Cf. United States v. Walker,* 41 MJ 462 (1995). In light of this conclusion, the second question is moot, so we decline to answer it.

*Continuing Jurisdiction*

■ Usually, a Court of Military Review, now Court of Criminal Appeals, acquires jurisdiction to review a court-martial conviction by virtue of the severity of the approved sentence. *See* Art. 66(b). Once such appellate jurisdiction attaches, the case then moves along a "time-line" or statutory track, forward but sometimes backward, *see United States v. Boudreaux, supra,* until, at some point, a decision becomes final, and no further appeal is available or necessary.

The Government, however, seeks to sever the connection between the original court-martial here, which was within the statutory jurisdiction of the Court of Military Review, and the rehearing—as though they were different cases on different time-lines or tracks. The Government urges that, regardless of the outcome of the original court-martial, once "all findings are set aside, then the basis for review ceases," and subsequent review of findings and sentence depends entirely on the qualifying nature of the sentence resulting from the rehearing. Final Brief at 9 and 10.

This argument, however, ignores the host of legal connections between the two. *See, e.g.,* RCM 810(d)(1), Manual for Courts–Martial, United States (1995 ed.) (sentence at rehearing limited to approved sentence on same charges from first court-martial); RCM 810(d)(2) (effect of original pretrial agreement at rehearing); RCM 1107(e)(1)(E) (finding of lesser-included offense at original court-martial precludes trial of greater offense at rehearing). Moreover, the argument necessarily would lead to treating differently a case in which the Court of Criminal Appeals had set aside *all* findings and the sentence and authorized a rehearing from · a case in which that court had set aside only *some* of the findings and the sentence and authorized a rehearing on those findings and/or the sentence. We doubt that Congress intended to segment appellate jurisdiction in this strange way.

■ Instead, we find the solution in *Boudreaux*'s visual depiction of a case moving, forward and occasionally backward, along a time-line, toward some point of finality. At no time prior to that point does a case *fall off* this track. As we said in *Boudreaux:*

> Once the Court of Military Review has jurisdiction over a case, no action by a lower court or convening authority will diminish it.[1] *Boudreaux v. United States Navy–Marine Corps Court of Military Re-*

view, 28 MJ 181 (CMA 1989). The same holds true before this Court.

35 MJ at 295 (footnote omitted).

### Conscientious-Objector Defense to Orders

A full recitation of the facts leading to the charges against Johnson appears in the opinion of the court below and need not be repeated here. Similar facts and a similar decision by the Court of Military Review led the Judge Advocate General to certify virtually identical issues to this Court in *United States v. Walker, supra.* There, the lead opinion of Judge Sullivan specifically cited *United States v. Lenox, supra,* with this highly relevant explanation: "Where conscientious objector regulation creates no right to refuse military duties, its violation creates no defense to missing movement or disobedience of orders." 41 MJ at 468.

Our study of the *Lenox* opinion confirms the accuracy of that summary. There, in arguing a motion to dismiss, trial defense counsel had argued

> that certain procedural requirements had not been adhered to in processing appellant's application for discharge as a conscientious objector and that the application had been erroneously denied by the Secretary of the Army. He contended on this basis that the order issued to effect transportation of the appellant to Vietnam was, therefore, illegal.

21 USCMA at 315, 45 CMR at 89. Unsuccessful in this contention, the accused raised the related underlying ·issue in this Court: Whether the Army " 'had utilized an improper standard in rejecting the accused's claim of conscientious objection.' " *Id.*

In its opinion, the Court had quoted from the Supreme Court's then-recent opinion in *Parisi v. Davidson,* 405 U.S. 34, 42, 92 S.Ct. 815, 820, 31 L.Ed.2d 17 (1972), where the High Court had noted that this Court

> " . . . 'has held that a soldier charged in a court-martial with refusal to obey a lawful

---

1. Of course, under Articles 66(e) or 67(e), Uniform Code of Military Justice, 10 USC §§ 866(e) and 867(e) (1989), respectively, a case could reach this point of finality through a decision of the convening authority to dismiss the charges against an accused because he deemed that a rehearing that had been authorized by a Court of Criminal Appeals or by this Court was impracticable.

order may, in certain limited circumstances, defend upon the ground that the order was not lawful because he had wrongfully been denied an administrative discharge as a conscientious objector. *United States v. Noyd,* 18 USCMA 483, 40 CMR 195.[2] The scope of the *Noyd* doctrine is narrow, *United States v. Wilson,* 19 USCMA 100, 41 CMR 100, and its present vitality not wholly clear, *United States v. Stewart,* 20 USCMA 272, 43 CMR 112.'"

This Court then proceeded, *id.*:

Although what follows hereinafter exceeds the specified purview of the granted issue, we feel impelled to exercise our prerogative and reexamine the holding in *United States v. Noyd* ... As we read *Parisi v. Davidson, supra,* reread *United States v. Stewart,* ... and consider the briefs and oral arguments in the case before us, we see our duty to make clear our position concerning the availability or nonavailability of the so-called *Noyd* defense.

21 USCMA at 316, 45 CMR at 90.

The *Lenox* Court's reexamination of *Noyd* began with the acknowledgement that in *Noyd,* "this Court apparently decided that, within the framework of the pertinent regulation, unlawful action by the Secretary on an application for discharge as a conscientious objector could invalidate a dependent military order to the applicant." 21 USCMA at 317, 45 CMR at 91. Actually, the forthright language in *Noyd* was, "If the Secretary's decision was illegal, the order it generated was also illegal. *See United States v. Gentle,* 16 USCMA 437, 37 CMR 57 [1966]." 18 USCMA at 492, 40 CMR at 204.

That said, however, Judge Duncan, writing for the majority, continued:

After the *Noyd* decision, this Court decided *United States v. Stewart, supra.* We believe Judge Darden accurately stated

the posture of the law in *Stewart* [20 USCMA] at pages 275 and 276 [43 CMR at pages 115 and 116]:

"... But claimed conscientious objection or a Secretary's denial of a discharge application by a conscientious objector is *a defense to a court-martial proceeding only if the Constitution, a statute, or a regulation so provides.* In this instance there is no constitutional right to refuse military orders because of the conscientious objection; no statutory provision makes conscientious objection or a Secretary's improper denial of a conscientious objector's discharge application a defense in a military trial and the regulation permitting submission of discharge application by in-service conscientious objectors contains no authority for the litigation of this issue at a court-martial."

(Emphasis added.)

Action by the Secretary of a military department on such an application, even if erroneous, does not operate to end the obligation of a member of the armed forces to obey orders that are otherwise lawful.

Contrary to the *Noyd* rationale, we do not deem the order for movement or the order to board the plane to have been tainted with illegality and generated by the alleged illegality of the Secretary's decision.... Such circumstances do not provide fact or inference that one action *generated* the other. The generation of orders concept would appear to be nonexclusive of any order given subsequent to the Secretary's action, therefore, such a hypothesis would result in a member actually being in the service, but who could not be the recipient of any lawful order. This we cannot accept as law.

21 USCMA at 318–19, 45 CMR at 92–93.

■ Thus, as Judge Sullivan's brief parenthetical summary of *Lenox* in the lead *Walker* opinion seemed to indicate, *Lenox* is dis-

---

**2.** This Court's decision in *Noyd,* on August 15, 1969, came 2 months after the Supreme Court of the United States had affirmed the Court of Appeals' denial of Captain Noyd's petition for extraordinary relief for release from confinement pending appellate review of his conviction by this Court. *Noyd v. Bond,* 395 U.S. 683, 89 S.Ct.

1876, 23 L.Ed.2d 631 (1969). The Supreme Court agreed with the Court of Appeals that first he had to exhaust available remedies in the military justice system by petitioning this Court for such extraordinary relief before he could go to a civilian court. *Id.* at 698, 89 S.Ct. at 1884–85.

positive of this certified issue. Johnson has cited us to no constitutional or statutory provision that makes conscientious objection, a pending application for that status, or indeed an alleged violation of the procedures for considering that status, a defense to a court-martial for missing movement or disobeying otherwise lawful orders. As to any possible regulatory support for his position, similarly we see no authority for a self-help remedy of disobedience.

Johnson's remedy was a civil one, such as seeking injunctive relief or petitioning for a writ of habeas corpus, *see Parisi v. Davidson, supra*—not a criminal one, such as disobeying otherwise lawful orders. To reiterate what we said in the *Lenox* opinion: "Action by the Secretary of a military department on such an application, even if erroneous, does not operate to end the obligation of a member of the armed forces to obey orders that are otherwise lawful." 21 USCMA at 319, 45 CMR at 93. The discipline and obedience to facially lawful orders that are critical to military-mission accomplishment can tolerate no less.

### Conclusion

The decision of the United States Army Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to that court for further review.

Chief Judge COX and Judges CRAWFORD and GIERKE concur.

SULLIVAN, Judge (concurring):

The accused was stationed in the United States at the time his unit was alerted for deployment in August of 1990. Accordingly, this is not the regulatory situation presented in *United States v. Walker*, 41 MJ 462 (1995). Nevertheless, appellant did not file a request for deletion from his deployment order as required by paragraph 6–3, Army Regulation 614–30 at 6–6 (1990). I agree with my wise brother, Senior Judge Everett, that Specialist Johnson had no right to disobey this order.