UNITED STATES, Appellee

v.

ROQUE ORNELAS, Private, U. S. Army, Appellant

2 USCMA 96, 6 CMR 96

No. 446

Decided December 31, 1952

Lt. Col. George E. Mickel, U. S. Army, and Lt. Col. James C. Hamilton, U. S. Army, for Appellant.

Lt. Col. Thayer Chapman, U. S. Army, and 1st Lt. Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

Petitioner was charged with desertion in violation of Article of War 58, 10 USC § 1530, based on an alleged unauthorized absence from January 9, 1944, to August 9, 1951. Upon trial by general court-martial, petitioner moved to dismiss on the ground that the court had no jurisdiction. The jurisdictional defect alleged was that the accused—a draftee—had never become a member of the armed forces, having failed to take the oath of allegiance. The law officer denied the motion, petitioner pleaded not guilty, and trial proceeded. The prosecution introduced in evidence extract copies of morning reports showing the period of absence as alleged, and then rested. The accused took the stand in his own

behalf and testified concerning the circumstances surrounding the alleged induction. Thereafter, defense renewed the motion as to jurisdiction, and it was again denied. Defense requested that the issue of jurisdiction be submitted to the court under appropriate instructions, but the request was refused. The court found petitioner guilty as charged, and sentenced him to dishonorable discharge, total forfeitures, and confinement for two years. The findings and sentence were approved by the convening authority, and the Army board of review affirmed without opinion. We granted the accused's petition. It is our view of this case that the defense motion raised a proper issue as to lack of jurisdiction, and that this issue involved a question of fact, which should have been submitted to the court under appropriate instructions.

If the accused was not lawfully inducted into the Army, as defense claims, then he could not be con- victed of desertion, which is a purely military offense. See Articles of War 2 and 58, 10 USC §§ 1473 and 1530, which were effective at the time this offense was allegedly committed. The evidence bearing on the issue of whether the accused was lawfully inducted is as follows: The accused, a Mexican by race, was born at Clifton, Arizona, and was an American citizen. At the age of six, he moved to Juarez, Mexico, where he lived continuously thereafter. He never learned English and testified through an interpreter at the trial. Petitioner stated that, in 1943, he became interested in enlisting in the Army, and made inquiries in El Paso, Texas, as to the possibility of serving. Sometime thereafter, he received a card notifying him to report to Fort Bliss, Texas, for physical examination and induction into the Army. He reported, took and passed the physical examination, but went no further. He was given permission to return to Juarez, and this he did. He testified that no one explained to him while at Fort Bliss what was happening. He was not read the Articles of War, 10

USC §§ 1471–1593, and was not administered an oath. He was not asked to stand up with a group of men and was not asked to raise his right hand. He was given no uniform, and did not spend the night at Fort Bliss or any other army camp. No one told him anything except that he was free to return to Juarez but had to report back within fifteen days. He attempted to re-enter the United States on three occasions but each time was refused entry. Petitioner reiterated several times that the only thing he did at Fort Bliss was take the physical examination. All of this information is taken from the accused's testimony at the trial. Other evidence which might be deemed to have some bearing on the accused's status consists of the morning report extracts, introduced to show the duration of accused's absence, which indicate the accused's attachment to specific Army units. However, we note that one of the extracts was neither signed nor initialed by the reporting officer. United States v. Parlier (No. 347), 4 CMR 2⁻, decided June 13, 1952, makes it clear that such extracts are not admissible in evidence. We note also that there may be some doubt whether a morning report extract showing attachment to a specific unit can be considered as evidence establishing the regularity of preceding induction, but resolution of this issue is not necessary to the decision in this case, and we expressly reserve the question for future consideration.

Section 11 of the Selective Training and Service Act of 1940, effective at the time of petitioner's contested induction, provides that "No person shall be tried by any military or naval court martial in any case arising under this Act unless such person has been actually inducted for the training and service prescribed under this Act or unless he is subject to trial by court martial under laws in force prior to the enactment of this Act." 54 Stat 885, 894. This statutory provision, when read in conjunction with Article of War 2(a), supra, requires the hold-

ing that petitioner was not subject to military law at the time of his absence unless he was, prior thereto, "actually inducted" into the Army.

Army Regulation 615–500 of September 1, 1942 (as amended by Change 4 of March 30, 1943), provides as follows in relation to induction procedure:

"13. Procedure.

. . . . . . .

"d. Induction.—Upon completion of the physical examination and after certification by a medical officer, selectees found to be physically and mentally fit for general military service will be inducted.

"e. Induction ceremony.— (1) the induction will be performed by an officer who, prior to administering the oath, will give the men about to be inducted a short patriotic talk. The ceremony should take place in a setting, preferably a large room, made colorful by the display of flags with guard and display of suitable pictures, and made as impressive as possible. Where practicable, martial music will be provided either by a band or in the form of recorded music. For the benefit of any non-declarant aliens about to be inducted the induction officer will explain the difference between the oath of allegiance and the oath of service and obedience. The oath, Article of War 109, will then be administered: . . . ."

This regulation, together with other authorities, led the United States Supreme Court to hold in March 1944 that a draft selectee becomes "actually inducted" when "in obedience to the order of his board and after the army has found him acceptable for service he undergoes whatever ceremony or requirements of admission the War Department has prescribed." Billings v. Truesdell, 321 US 542, 559, 88 L ed 917, 926, 64 S Ct 737. That and other Federal cases held that the oath ceremony constituted the turning point in the transition from civilian to military. Sanford v. Callan, 148 F2d 376 (CA5th Cir). It is true that subsequent Federal decisions have decided the issue of induction on other criteria than completing the oath ceremony. See Hibbs v. Catovolo, 145 F2d 866 (CA5th Cir), cert den 325 US 854, 89 L ed 1974, 65 S Ct 1085; United States v. Mellis, 59 F Supp 682 (DC, NC); Mayborn v. Heflebower, 145 F2d 864 (CA5th Cir), cert den 325 US 854, 89 L ed 1975, 65 S Ct 1087. However, these cases either arose after changes in Army Regulations relative to induction were made following Billings v. Truesdell, supra, or were based upon consideration such as the acceptance of Army pay and other benefits, or the voluntary acquiescence in military obligations following induction. There is no basis here for the application of these criteria. The induction involved in Billings v. Truesdell, supra, occurred in August 1942. This accused was drafted in December 1943. Billings v. Truesdell, supra, was decided in March 1944 and the Army regulations upon which that decision was based were not changed until August 10, 1944. The rule established by the Supreme Court in Billings v. Truesdell, supra, must, therefore, be followed. If this accused did not participate in an induction ceremony, then he was never inducted, never became subject to military law, and could not be tried by court-martial for violations of that law.

There was, therefore, sound legal basis for the defense motion to dismiss based on a lack of jurisdiction. The only question left for resolution was whether the facts showed that the accused completed the induction ceremony. As already noted, the accused claimed that he did not. This clearly raised an issue of fact which, apparently, was resolved by the law officer against the accused. We think that, in so doing, the law officer erred—he should have submitted the issue to the court under appropriate instructions.

The Uniform Code of Military Justice, Article 51(b), 50 USC § 626, provides that the law officer of a general court-martial shall rule on interlocutory questions, other than challenges. It provides further that this ruling, save on motions for findings of not guilty, or on a question as to an accused's

**99**

sanity, "shall be final and shall constitute the ruling of the court." The Manual for Courts-Martial, United States, 1951, paragraph 67, concerns itself with "Motions Raising Defenses and Objections," one of which is that involved in the case before us—want of jurisdiction. Subparagraph *e* of the same paragraph announces unequivocally that "A decision on such a motion is an interlocutory matter."

Where the determination of jurisdiction involves no contested issue of fact, so that the question becomes one of law alone, it would be quite sound, and entirely consistent with civilian practice, to leave the matter to the sole determination of the law officer. But where there are disputed facts to be resolved, it would seem unusual indeed that the law officer should resolve them, and we do not believe this to be the intention of Article 51(b) and paragraph 67e, supra. In a latter portion of this paragraph it is said that "If the motion raises a contested issue of fact which should properly be considered by the court in connection with its determination of the accused's guilt or innocence, the introduction of evidence thereon may be deferred until evidence on the general issue is received." The underlying tenor of this statement suggests that there *may* be issues of fact involved in a defense or objection which should be dealt with by members of the court. But difficulty arises in determining what are the issues of fact "which should properly be considered by the court." A conceivable inference is that some issues of fact are "properly" for the court and some are not, but no basis for the taking of distinction is expressly given. Some assistance may be gleaned from an example given in paragraph 67e, supra, which states in substance that, if an accused defends on the ground that prosecution is barred by the statute of limitations, the court may decide, in the course of its determination of the guilt or innocence of the accused, the question of when the offense was in fact committed. This seems to be indistinguishable in essence from the sort of factual issue involved here—namely, whether the ac-

cused had in truth taken the oath of induction. All of this appears, on its face at least, to conflict with the preceding portion of paragraph 67e, to the effect that action on motions raising defenses and objections is "an interlocutory matter"—and with the Code, Article 51(b), supra, which makes the ruling of the law officer on "interlocutory questions" final. Accepting for the moment the notion that an adoption of the usual civilian practice would require submission of such a factual issue to the court, it is evident that an obstacle to the derivation of the same rule from the Code and Manual is the sentence in the latter's paragraph 67e to the effect that "A decision on such a motion is an interlocutory matter." It does not seem likely that the draftsmen of the Manual thereby intended that the law officer be entrusted with final decision of issues of fact raised in connection with "Defenses and Objections." This would be wholly inconsistent with their subsequent reference in the same paragraph to the necessity for decision by the court of some factual issues. It is to be noted that the sentence quoted does not provide that *questions* raised by such defenses and objections *are* "interlocutory," but rather that a *decision* thereon is an interlocutory matter. In our opinion, the draftsmen were quite clearly saying only that such decision is interlocutory in a *procedural* sense and *not* that it is interlocutory in a substantive sense—which would bring it within the exclusive purview of the law officer. We think they meant to observe that the decision is interlocutory in that it does not bear on the ultimate merits of the case.

There is nothing in the legislative history of the Uniform Code of Military Justice which assists in dealing with this problem. However, the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 82, discloses that paragraph 67 of the Manual was patterned on Rule 12(b), Federal Rules of Criminal Procedure. This rule states clearly that issues of fact arising in connection with defenses and objections "shall be tried by a jury if a jury trial is re-

100

quired under the Constitution or an act of Congress." This suggests forcibly that the Manual draftsmen did not intend to vest in law officers final authority to decide issues of fact arising in connection with a defense or objection raised by an accused.

We conclude that where an accused raises a defense or objection which should properly be considered by the court in its determination of guilt or innocence, and which resolves itself into a question of fact, that issue must be presented to and decided by the court pursuant to appropriate instructions. But where the issue is purely interlocutory or raises solely a question of law, it is within the sole cognizance of the law officer. It follows that the law officer in this case erred in making his decision on the issue of jurisdiction final. The accused was entitled to have the issue submitted to the court itself and decided by them under appropriate instructions. We should add that it matters not, in our opinion, whether the issue is submitted at the time the motion is made or at the conclusion of the case when the court is required to deliberate on the evidence.

The decision of the board of review is reversed and a rehearing is ordered.

Judges LATIMER and BROSMAN concur.