SULLIVAN, Judge
(concurring in the result):
INDEX
I Overview 115
II The Political-Question Doctrine Resolves All Claims But One 116
III General View of the Case 116
IV General View of the Law 117
V Tidal 118
VI Lawfulness of Order As Element 120
VII Lawfulness of Order is Not an Interlocutory • Question of Law ' 122
VIII Error under Gaudin 123
*115 IX Harmless Error under Neder 126
X Conclusion 128
I

Overview

Thousands of military orders are given each day in our armed forces as they have been given throughout the history of our great country. Article 92(2), Uniform Code of Military Justice, 10 USC § 892, legislatively reflects the traditional Anglo-American view that only the disobedience of “lawful” orders is prohibited. See, e.g., Articles 90(2), 91(2), and 92(1), UCMJ, 10 USC §§ 890(2), 891(2), and 892(1), respectively. Today, the majority characterizes the lawfulness of an order as mere “surplusage” and judicially eliminates it as an essential element of a disobedience offense. 55 MJ at 105 and n. 7. I strongly disagree with this radical departure from our political, legal, and military tradition. See Unger v. Ziemniak, 27 MJ 349, 358 (CMA1989).
The instant case is ultimately about the process due an American servicemember on trial for the crime of disobedience of a lawful order, ie., how the lawfulness of the disobeyed order is to be determined at a court-martial and whether that procedure is constitutional. See generally Weiss v. United States, 510 U.S. 163, 176-81, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). Today, the majority opinion holds that the lawfulness of an order was properly decided as “a question of law” by the military judge in this case and cites Article 51(b), UCMJ, 10 USC § 851(b). I view the lawfulness of an order in a disobedience case as an element of that offense which in appellant’s case presented a justiciable mixed question of fact and law that the members of his court-martial should have decided. See Article 51(c) and United States v. Gaudin, 515 U.S. 506, 522-23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (elements of a criminal offense which are mixed questions of fact and law must be determined by the jury members).
Finally, modern military legal practice has long provided a procedure for determining the lawfulness of an order in disobedience cases. See para. 3-16-3 n. 3, Military Judges’ Benchbook (Department of the Army Pamphlet 27-9 (01 April 2001) and (30 Sept. 1996)); see also paras. 3-14-2 n. 4; 3-15-2 n. 3; 3-16-1, n. 3; and 3-16-2 n. 4, Benchbook, supra (1996 & 2001 eds.). It is well established that the military judge determines the lawfulness of an order and so instructs the members if no question of fact is raised pertaining to this question. See Unger v. Ziemniak, supra at 359. However, if there are questions of fact raised pertaining to the lawfulness of the order violated, the members of the court-martial are required to determine lawfulness as a mixed question of fact and law. Id. See United States v. Robinson, 6 USCMA 347, 356, 20 CMR 63, 72 (1955); United States v. Zachery, 6 CMR 833, 837 (AFBR 1952) (factual questions concerning legality of order to be decided by members). Today, the majority disregards this long-existing military practice and broadly creates a new rule that the military judge finally decides the lawfulness of an order in all cases prosecuted under Article 92. But see United States v. Ornelas, 2 USCMA 96, 99-101, 6 CMR 96, 99-101 (1952) and Article 39(a)(1) and (2), UCMJ, 10 USC § 839(a)(1) & (2); see generally C. Wright, Federal Practice and Procedure: Criminal 3d § 194 at 366-67 (1999) (pretrial motion raising defenses and objections which implicate trial of general issue should only be decided by jury). I must disagree with this additional departure from established military practice and its application to appellant’s case where I conclude questions of fact were raised concerning the lawfulness of the order violated. See generally United States v. Scheffer, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); see also United States v. Tualla, 52 MJ 228, 231 (2000) (“[a]dhering to precedent is usually the wise policy” (internal quotation marks omitted)).
The majority’s unsettling approach to all these questions is completely unnecessary to *116 resolve appellant’s case. As explained below, appellant had a single justiciable legal claim against his commander’s order which was based on a service uniform regulation. The evidence in this case, however, overwhelmingly established that this order did not violate that Army uniform regulation and was otherwise lawful. See Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); see also Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).
II

The Political-Question Doctrine Resolves All of Appellant’s Claims But One

My separate opinion in this case is expressly limited to the single claim of appellant that the disobeyed order was unlawful because it violated a U.S. Army Uniform Regulation under the facts of his case. This particular claim is the only claim that raised a contested question of fact. Appellant made other legal claims that the order to wear certain United Nations (UN) accoutrements on his United States Army uniform was unlawful. In these other claims, he particularly argued that the order was unlawful based on the constitutional prohibition against involuntary servitude (Amend. XIII), the UN Participation Act, and his enlistment contract. (R. 423) These arguments involved no real factual disputes and pertained to the legality of his deployment order to Macedonia as part of the UN Peacekeeping Force. See also United States v. Lenox, 21 USCMA 314, 45 CMR 88 (1972).
It is my view that these particular legal claims (challenges to deployment) are not justiciable issues at a court-martial in a trial for disobedience of orders. See United States v. Johnson, 17 USCMA 246, 38 CMR 44 (1967). In this regard, I agree with Judge Effron and Senior Judge Everett that these legal arguments were properly rejected by the military judge. The disposition of these claims under the political-question doctrine was a pure question of law for the military judge alone (see United States v. Austin, 27 MJ 227, 230, 234 (CMA 1988); United States v. Phillips, 18 USCMA 230, 234, 39 CMR 230, 234 (1969)) and did not legally violate appellant’s right to a decision by the factfin-ders on all the elements of a crime. See United States v. Brown, 50 MJ 262, 265 (1999); see also United States v. Bridges, 12 USCMA 96, 99-100, 30 CMR 96, 99-100 (1961) (decision on what law to apply to determine whether element of crime established is solely question of law for president of court-martial). See generally Article 51(b), UCMJ, 10 USC § 851(b) (1968) (adding “questions of law” authorization for military judge).
The political-question doctrine, however, cannot be used to resolve appellant’s additional claim that the order in question violated the U.S. Army Uniform Regulation. This claim did not require a ruling on the legality of the deployment and raised justiciable questions of fact pertaining to an element of the offense that needed to go to the military jury for resolution. See United States v. Robinson, supra at 353-56, 20 CMR at 69-72. See generally Article 51(c) and United States v. Gaudin, supra. On this point I join the wise and thoughtful opinion of Senior Judge (former Chief Judge) Everett. His resolution of this particular issue is consistent with my view of this issue.
Ill

General View of the Case

This is the case of Specialist Michael New, an American soldier in Germany, who was ordered by his U.S. Army superiors to put on a United Nations blue beret and UN insignia on his uniform when his unit was alerted for deployment to Macedonia.[1] He refused this order and was ordered to stand tidal for that disobedience at a court-martial. Specialist New chose a trial by a court-martial panel of *117 members [hereinafter called a “military jury”].[2]
At the court-martial of Specialist New, in order to successfully prosecute him, the Government basically needed to prove three facts:
1. that Specialist New received and understood the order to put on the UN Beret and UN insignia;
2. that the order was lawful; and
3. that Specialist New disobeyed the order.
At trial Specialist New did not dispute that the order was given, that he understood it or that he disobeyed it. However he made clear that his intended defense at trial was that the order was unlawful for several different reasons. Thus, his guilt or innocence at trial was to turn largely on the determination by the “military jury” whether the order he disobeyed was lawful or unlawful. As shall be discussed in detail below, his judge instructed the “military jury” before they deliberated that the order was lawful. Thus, the issue of Specialist New’s guilt was, in effect, determined by the judge in his instructions, rather than by the “military jury” in its deliberations. In my view, this was an error under established military procedure and as a matter of constitutional due process.
IV

General View of the Law

As a cadet at West Point[3] and as a soldier, I was taught that (i) all lawful orders in the U.S. Army were to be obeyed; and (ii) however, if you believed that an order was unlawful, you could disobey it but you would risk a court-martial where a “military jury” would either validate or reject your decision to disobey. See J. Snedeker, Military Justice under the Uniform Code 593, 599 (1953); W. Winthrop, Military Law and Precedents 575-76 (2d ed.1920 Reprint); W. De Hart, Observations on Military Law and the Constitution and Practice of Courts-Martial, 165-66 (1846).
Colonel Winthrop stated the following regarding a soldier’s decision to disobey an order he thought was unlawful:
“Lawful command.” The word “lawful” is indeed surplusage, and would have been implied from the word “command” alone, but, being used, it goes to point the conclusion affirmed by all the authorities that a command not lawful may be dis *118 obeyed, no matter from what source it proceeds. But to justify an inferior in disobeying an order as illegal, the case must be an extreme one and the illegality not doubtful. The order must be clearly repugnant to some specific statute, to the law or usage of the military service, or to the general law of the land. The unlawfulness of the command must be a fact, and, in view of the general presumption of law in favor of the authority of military orders emanating from official superiors, the onus of establishing this fact will, in all cases-except where the order is palpably illegal upon its face-devolve upon the defence, and clear and convincing evidence will be required to rebut the presumption.
The legality of the order may depend upon the period, whether one of peace or war, (or other emergency,) at which it is issued. An order which would be unlawful in peace or in the absence of any public exigency, may be perfectly lawful in war as being justified by the usages of civilized warfare. Thus an order for the seizure of citizens’ property for the subsistence or transportation of the troops, the construction of defences, & c., or for its destruction to facilitate the operations of the army in the field, or to prevent its falling into the hands of the enemy, would be not only authorized, but to disobey it would be a grave military crime. But, in general, in time of peace an order similarly in disregard or private right would be repugnant to the first principles of law, and to fail to obey it would constitute no violation of the present Article.
But while a military inferior may be justified in not obeying an order as being unlawful, he will always assume to do so on his own personal responsibility and at his own risk. Even where there may seem to be ample warrant for his act, he will, in justifying, commonly be at a very considerable disadvantage, the presumption being, as a rule, in favor of the legality of the order as an executive mandate, and the facts of the case and reasons for the action being often unknown in part at least to himself and in the possession only of the superior. In the great majority of cases therefore it is found both safer and wiser for the inferior, instead of resisting an apparently arbitrary authority, to accept the alternative or obeying even to his own detriment, thus also placing himself in the most favorable position for obtaining redress in the future. On other hand, should injury to a third person, or damage to the United States, result from the execution of an order by a subordinate, the plea that he acted simply in obedience tot he mandate of his proper superior will be favored at military law, and a court-martial mil almost invariably justify and protect an accused who has been exposed to prosecution by reason of his unquestioning fidelity to duty, holding the superior alone responsible. How far he will be protected by the civil tribunals, if sued or prosecuted on account of a cause of action or offence involved in his proceeding, will be considered [elsewhere].
Winthrop, supra at 575-76 (most emphasis added; footnotes omitted).
It is also my view today that a military accused has a codal and constitutional right to have the members of his court-martial, not the military judge, determine whether the Government has proved, beyond a reasonable doubt, each and every element of the offense of which he is charged. See Article 51(c), UCMJ, 10 USC § 851(c), and United States v. Glover, 50 MJ 476 (1999); United States v. Brown, 50 MJ at 265; United States v. Mance, 26 MJ 244, 254 (CMA 1988) (duty of military judge to instruct members on all elements of the offense). See also United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444; see generally Weiss v. United States, 510 U.S. at 177-78, 114 S.Ct. 752 (recognizing Fifth Amendment due process standard for measuring court-martial procedures).
Y

Appellant’s Trial

Appellant was charged and found guilty of failure to obey a lawful order in violation of Article 92(2), UCMJ. The specification he was found guilty of states:
SPECIFICATION: In that Specialist Michael G. New, U.S. Army, having knowl *119 edge of a lawful order issued by LTC Stephen R. Layfield on 2 OCT 95 and CPT Roger H. Palmateer on 4 OCT 95, to wear the prescribed uniform for the deployment to Macedonia, ie., U.N. patches and cap, an order which it was his duty to obey, did, at or near Schweinfurt, Germany, on or about 10 OCT 95, fail to obey the same.
(Emphasis added.)
In a pretrial session under Article 39(a), UCMJ, 10 USC § 839(a), the military judge addressed a series of government and defense motions, including motions to dismiss which he denied. Then, the judge held as a matter of law that the uniform order given to appellant was lawful and that the members of the jury would be so instructed with regard to their deliberations on his guilt of disobeying that order. (R. 285, 376) Defense counsel strongly objected to both these rulings. (R. 423-433, 448 — 49)
Appellant had raised several claims that the order to attach UN accoutrements {ie., patches and cap) to his U.S. Army uniform was unlawful. As noted earlier, these arguments pertain to the legality of appellant’s deployment and are not justiciable issues under our case law. See United States v. Johnson, 17 USCMA 246, 38 CMR 44 (1967). I agree with Judge Effron and Senior Judge Everett that appellant’s claims that the order was illegal on these bases were properly rejected by the judge as a matter of law (“political-question doctrine”). See United States v. Johnson, supra.
A remaining argument, however, that the defense asserted at tidal was that the order in question, ie., to wear the UN patches and cap, violated a Department of the Army Regulation, ie., Army Regulation (AR) 670-1, Wear and Appearance of Army Uniforms and Insignia (1 September 1992). It pointed to paragraph 3 — 4, which stated:
Insignia and accouterments authorized for wear with these uniforms are * * * (k) Foreign badges, distinctive unit insignia, and regiment distinctive insignia unll not be worn on these uniforms.
(Emphasis added.)
Both the military judge and the Court of Criminal Appeals found that this regulation did not invalidate the disobeyed order in this case because paragraphs 1-18 and 2-6d of the same regulation permitted these uniform additions.
Paragraph 1-18 provides:
Wearing of organizational protective or reflective clothing.
Commanders may require the wear of organizational protective or reflective items or other occupational health or safety equipment with the uniform when safety considerations make it appropriate. These items will be furnished at no cost to the individual.
(Emphasis added.)
Paragraph 2-6d provides:
The commander in charge of units of maneuver may prescribe the uniform to be worn within the maneuver area.
(Emphasis added.)
Both the judge at trial and the Court of Criminal Appeals found as fact that the disobeyed order was issued for “safety” purposes and while on “maneuver.” (R. 426, 428) (R. 443-44 & 449)
The military judge then made a ruling that the order given to> appellant was a lawful order. See R. 431. Later, prior to trial counsel’s and defense counsel’s arguments on findings, the military judge gave the members the following instructions on findings:
In order to find the accused guilty of this [disobedience] offense, you must be convinced by legal and competent evidence beyond a reasonable doubt of the following elements: One, that a member of the armed forces, namely, Lieutenant Colonel Stephen R. Layfield, on 2 October 1995; and Captain Roger H. Palmateer, on 4 October 1995, issued a certain lawful order to wear the prescribed uniform for the deployment to Macedonia, ie., UN patches and cap;
Members of the court, as a matter of law, the order in this case, as described in the *120 specification — if, in fact, there was such an order — was a lawful order.
❖ * *
You should consider, along with all the evidence in this case, the following: I previously instructed you that, as a matter of law, the order in this case, as described in the specification — if, in fact, there was such an order — was a lawful order. I further instruct you at this time that, as a matter of law, the accused would not have violated AR 670-1 by obeying the order in this case as described in the specification, if, in fact, there was such an order.
(R. 782-84 (emphasis added)).
After the arguments on findings, the military judge again instructed the members on the findings in the following manner:
I have judicially noticed that AR 670-1 is a lawful regulation [and] that the accused had a duty to obey that regulation.
❖ ❖ *
You should consider, along with all the evidence in this case, the following: I previously instructed you that, as a matter of law, the order in this case, as described in the specification — if, in fact, there was such an order — was a lawful order. I further instruct you at this time that, as a matter of law, the accused would not have violated AR 670-1 by obeying the order in ' this case, as described in the specification, if, in fact, there was such an order.
(R. 829-30 (emphasis added)).
VI
Lawfulness Of Order As Element Of The Offense
The first question I will particularly address is whether the lawfulness of the order allegedly violated in this case is an element of the offense of disobedience of an order under Article 92(2), UCMJ. This criminal statute states:
§ 892. Art. 92. Failure to obey order or regulation
Any person subject to this chapter who—
(1) violates or fails to obey any lawful general order or regulation;
(2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or
(3) is derelict in the performance of his duties;
shall be punished as a court-martial may direct.
(Emphasis added.)
I conclude for several reasons that the lawfulness of the order allegedly violated in this case (the order to wear UN patches and cap) was an element of the charged offense and, accordingly, under Article 51(c), UCMJ, and United States v. Gaudin, 515 U.S. at 522-23, 115 S.Ct. 2310, should have been presented to the “military jury.”[4]
First, I note that Article 92, UCMJ, as well as other codal provisions noted above, expressly prohibit failure to obey a “lawful” order, language recognizing the historical and political importance of requiring service-members to obey only lawful orders. See G. Davis, A Treatise on the Military Law of the United States 378-82 (1913 3d ed. rev.); C. Clode, The Administration of Justice Under Military and Martial Law 30-31 (2nd ed.1874); Winthrop, Military Law and Precedents 575 (2nd ed.1920 Reprint). See generally United States v. Gentle, 16 USCMA *121 437, 441, 37 CMR 57, 61 (1966); United States v. Milldebrandt, 8 USCMA 635, 639, 25 CMR 139, 143 (1958) (Quinn, C.J., concurring in the result) (American servicemembers “are neither puppets nor robots”).
Second, I note that the President in the Manual for Courts-Martial, United States, has repeatedly identified the lawfulness of the order as an element of this offense.[5] See paras. 16b(2)(a) and 16c(l)(e), Part IV, Manual for Courts-Martial, United States (1995 ed.) (“That a member of the armed forces issued a certain lawful order”). See also para. 16(b)(2)(a), Manual, supra (1994 ed.); para. 16a(l) and c(l)(C), Manual, supra (1984 ed.); para. 1716, Manual for Courts-Martial, United States, 1969 (Revised Edition); para. 1716, Manual for Courts-Martial, United States, 1951.
Third, this Court, in an opinion authored by then-Chief Judge Everett, unanimously stated that “[i]n a prosecution for disobedience, lawfulness of the command is an element of the offense.” Unger v. Ziemniak, 27 MJ 349, 358 (1989). See Articles 90(2), 91(2), and 92(1) and (2), UCMJ; United States v. Martin, 1 USCMA 674, 676, 5 CMR 102, 104 (1952); United States v. Young, 1 MJ 433, 437 (CMA 1976). See United States v. Trani, 1 USCMA 293, 295, 3 CMR 27, 29 (1952); see also United States v. Hill, 5 CMR 665, 669 (AFBR 1952) (presumption of lawfulness in Manual is “tantamount to saying that the lawfulness of the regulation was an element of the offense”).
Fourth, military law commentators over many years have consistently stated that lawfulness of an order in disobedience case is an essential element of this offense or those related thereto. See J. Snedeker, Military Justice under the Uniform Code §§ 2902-03 at 593-94, 597-99; Davis, supra at 380-81; cf. Winthrop, supra at 575-76 (suggesting it may be a statutory defense).
Finally, the majority opinion asserts that the lawfulness language in Article 92(2) is mere “surplusage” and that the word “lawful” simply reinforces the nature of the order without establishing a separate and distinct element of the offense.[6] 55 MJ at 105 and n.
7. For this proposition it cites Winthrop, supra at 575, who there states:
The word “lawful” [in AW 21] is indeed surplusage, and would have been implied from the word “command” alone, but, being used, it goes to point the conclusion affirmed by all the authorities that a command not lawful may be disobeyed, no matter from what source it proceeds.
(Most emphasis added (footnote omitted.))
This quote from the “Blackstone of Military Law” (see Reid v. Covert, 354 U.S. 1, 19 n. 38, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality opinion)) provides relevant background for interpreting A’ticle 92(2) and determining its essential elements. See Staples v. United States, 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). Winthrop clearly recognized that if the statutory word “lawful” is used in the disobedience context, it has meaning in terms of the type of military order whose disobedience is punishable at a court-martial. It also shows that Congress could have enacted a statute prohibiting disobedience of orders without regard for the order’s lawfulness but chose not to do so. See Article 97, UCMJ, 10 USC § 897 (“except as provided by law”); cf. Article 95, UCMJ, 10 USC § 895 (arrest, custody, confinement); Article 96 (“whether or not the prisoner was committed in strict compliance with law”). Finally, his quotation clearly reflects the traditional Anglo-American view *122 that a servicemember may not be punished at a court-martial for disobeying all orders of whatever mature issued by a competent superior authority. In these circumstances, I disagree with my fellow Judges that Congress did not intend the lawfulness of the order violated to be an essential element of this criminal offense. See Unger v. Ziemn-iak, supra at 358.
VII

Lawfulness of Order is Not an Interlocutory Question or Question Of Law

The Court of Criminal Appeals held that the question whether a disobeyed order was lawful in this disobedience prosecution was “an interlocutory question.” 50 MJ 729, 738 (1999). An interlocutory question, however, is generally understood to be one that “does not bear on the ultimate merits of the case.” See United States v. Ornelas, 2 USCMA at 100, 6 CMR at 100. Moreover, we have expressly held that a question is not interlocutory where it is “concerned with disputed questions of fact regarding a matter which would bar or be a complete defense to the prosecution.” United States v. Berry, 6 USCMA 609, 613, 20 CMR 325, 329 (1956). Since a servicemember may not legally be found guilty of violating an unlawful order (see Winthrop, supra, and Unger v. Ziemniak, supra) and questions of fact were raised in this case concerning the lawfulness of the order, it cannot logically or legally be considered an interlocutory question within the meaning qf Article 51(b).
The majority of this Court further contends the lawfulness of an order is a “question of law” which must be decided by the military judge. See United States v. Carson, 15 USCMA 407, 408, 35 CMR 379, 380 (1965).[7] We have generally held that a question of law is one where no facts are at issue and only a “legal effect” need be determined. United States v. Ware, 1 MJ 282, 284 n. 4 (1976); United States v. Bielecki, 21 USCMA 450, 454, 45 CMR 224, 228 (1972); see United States v. Boehm, 17 USCMA 530, 38 CMR 328 (1968). None of those cases, however, approved judicial determinations on elements of an offense, nor has the dicta of this Court in Carson ever been reconciled with the decision of the Supreme Court in United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444. Cf. Dennis v. United States, 341 U.S. 494, 511-15, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (plurality opinion) (holding that pretrial motion challenging constitutionality of criminal statute on First Amendment grounds was question of law for judge); United States v. Viefhaus, 168 F.3d 392, 396-97 (10th Cir.) (distinguishing Dennis, as not involving element of offense), cert. denied, 527 U.S. 1040, 119 S.Ct. 2402, 144 L.Ed.2d 801 (1999). Moreover, there are facts at issue in this case which had to be resolved before the lawfulness of the order under the uniform regulation could be decided. See United States v. Robinson, 6 USCMA at 355, 20 CMR at 71.
The majority’s position that the lawfulness of an order in a disobedience prosecution is “a question of law,” not to be decided by the members, is based on language in this Court’s opinion in United States v. Carson, supra at 408, 35 CMR at 380. The majority concedes this statement in Carson was dicta. 55 MJ at 101. Moreover, it recognizes that the dicta in Carson is inconsistent with subsequent pronouncements of this Court in Un-ger v. Ziemniak, 27 MJ 349. In addition, I note the Supreme Court in Gaudin expressly rejected the notion that members of a jury were incompetent to decide mixed questions of law and fact, the lynchpin of the Carson dicta noted above. See United States v. Gaudin, supra at 521, 115 S.Ct. 2310; cf. United States v. Carson, supra at 408-09, 35 CMR at 380-81. Accordingly, Carson is not persuasive authority for holding that the lawfulness of an order in a disobedience prosecution is a question of law for the military judge.
There is another reason why I disagree with the majority’s holding that lawfulness of an order in a disobedience prosecution is a *123 question of law for the military judge under Article 51(b). Article 51(b) does not delineate what a “question of law” is for purposes of final decision by a military judge. Other provisions of the Uniform Code of Military Justice, however, do indicate Congress’ intent in this regard. In Article 51(c), Congress clearly recognized that members of a court-martial must decide whether the elements of an offense are proved by the Government beyond a reasonable doubt. Moreover, in Article 39(a)(1) and (2), UCMJ, 10 USC § 839(a)(1) & (2), Congress implicitly recognized that “motions raising defenses or objections which are [not] capable of determination without trial of the issues raised by a plea of not guilty” are a “matter ... appropriate for later consideration or decision by the members of the court.”
In this codal context, it is clear that a “question of law” for purposes of Article 51(b) does not include elements of an offense which raise mixed'questions of fact and law (e.g., United States v. Gaudin, supra) or pretrial motions which raise questions of fact “intermeshed with questions on the merits of a case” (United States v. Medina, 90 F.3d 459, 463-64 (11th Cir.1996); see United States v. Grimmett, 150 F.3d 958, 962 (8th Cir.1998)). To the extent that dicta in Carson suggests the contrary, it should be ignored. Accordingly, whether lawfulness of an order is an element of an offense or simply “an important issue” or an indiscrete element of the offense as suggested by the majority, it was not “a question of law” to be finally ruled on by the military judge under Article 51(b). See also United States v. Wallace, 2 USCMA 595, 598-99, 10 CMR 93, 96-97 (1953)(similarly sending to jury question of knowledge of order under Article 90(2)).
In my view, Article 51(c) requires the military judge to instruct the members on the law pertaining to the elements of a charged offense. See United States v. Brown, 50 MJ at 265. The content of these instructions are questions of law for the military judge. United States v. Bridges, 12 USCMA at 99-100, 30 CMR at 99-100; see generally Article 51(b), UCMJ, and 114 Cong. Rec. 29401 (1968). The ultimate decision, however, on an element of the crime which is a mixed question of fact and law is a matter for the members’ determination under Article 51(c), and Gaudin.

Yin

Error Under United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)

Having concluded that the lawfulness of the order violated is an element of the offense of disobedience of orders under Article 92(2), it is necessary to determine whether the military judge erred in withdrawing that question from the members’ consideration. The Supreme Court in Gaudin addressed a similar question where a federal district court judge refused to submit to the jury the question of the materiality of a fact contained in a false statement allegedly made in violation of 10 USC § 1001. 515 U.S. at 507, 115 S.Ct. 2310. The question before the Supreme Court was whether the accused “was entitled to have this element of the crime determined by the jury.” 515 U.S. at 509, 115 S.Ct. 2310.
In Gaudin, a case remarkably similar in concept to the instant case, a real estate broker was charged with making several false material statements on different federal loan documents in violation of 18 USC § 1001. Two counts charged him with “knowingly inflating the appraised value of the mortgaged property” and one count with falsely stating that the buyer paid some closing costs. The prosecution offered testimony of several government officials “who explained why the requested information” on the form “was important.” The Supreme Court noted what happened next:
At the close of the evidence, the United States District Court for the District of Montana instructed the jury that, to convict respondent, the Government was required to prove, inter alia, that the alleged false statements were material to the activities and decisions of HUD. But, the court further instructed, “[t]he issue of materiality ... is not submitted to you for your decision but rather is a matter for the decision of the court. You are instructed *124 that the statements charged in the indictment are material statements.” App. 2U, 29. The jury convicted respondent of the § 1001 charges.
515 U.S. at 508-09, 115 S.Ct. 2310 (emphasis added). The Ninth Circuit, sitting in panel and later en banc, reversed because case law required that the issue of materiality in a § 1001 prosecution be decided by the jury. The Supreme Court affirmed the Ninth Circuit by 9-0 vote.
The Supreme Court in Gaudin recognized the basic constitutional right of a criminal defendant “to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.” 515 U.S. at 522-23, 115 S.Ct. 2310 (emphasis added). It traced this right directly to the Fifth Amendment of the United States Constitution. It said:
The Fifth Amendment to the United States Constitution guarantees that no one will be deprived of liberty without “due process of law”; and the Sixth, that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.” We have held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. Sullivan v. Louisiana, 508 U.S. 275, 277-78, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The right to have a jury make the ultimate determination of guilty has an impressive pedigree. Blackstone described “trial by jury” as requiring that “the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendants] equals and neighbors.... ” 4 W. Blackstone, Commentaries on the Laws of England 343 (1769) (emphasis added). Justice Story wrote that the “trial by jury” guaranteed by the Constitution was [**2314] “generally understood to mean ... a trial by a jury of twelve men, impartially selected, who must unanimously concur in the guilt of the accused before a legal conviction can be had." 2 J. Story, Commentaries on the Constitution of the United States 541, n. 2 (4th ed. 1873) (emphasis added and deleted). This right was designed “to guard against a spirit of oppression and tyranny on the part of rulers,” and “was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties.” Id., at 540-41, 115 S.Ct. 2310. See also Duncan v. Louisiana, 391 U.S. 145, 151-54, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968) (tracing the history of trial by jury).
515 U.S. at 509-11, 115 S.Ct. 2310 (most emphasis added; footnotes omitted).
In Gaudin, supra, the Supreme Court ruled against the Government’s argument that “materiality” was a legal question, not a factual question, and therefore, should be decided by the trial judge alone. The majority today, however, with a familiar echo to the losing government position in Gaudin, holds that the lawfulness of an order is a “question of law” for the judge alone under Article 51(b), UCMJ.[8]
The Supreme Court, however, rejected this type of thinking in Gaudin when it said:
Other reasoning in Sinclair, [279 U.S. 263, 49 S.Ct. 268 (1929),] not yet repudiated, we repudiate now. It said that the question of pertinency “may be likened to those concerning relevancy at the trial of issues in court,” which “is uniformly held [to be] a question of law” for the court. 279 U.S. at 298, 49 S.Ct. 268. But how relevancy is treated for purposes of determining the admissibility of evidence says nothing about how relevancy should be treated when (like “pertinence” or “materiality”) it is made an element of a criminal *125 offense. It is commonplace for the same mixed question of law and fact to be assigned to the court for one purpose, and to the jury for another. The question of probable cause to conduct a search, for example, is resolved by the judge when it arises in the context of a motion to suppress evidence obtained in the search; but by the jury when it is one of the elements of the crime of depriving a person of constitutional rights under color of law, see 18 USC §§ 241-42. Cf. United States v. McQueeney, 674 F.2d 109, 114 (C.A.1 1982); United States v. Barker, 178 U.S.App. D.C. 174, 546 F.2d 940, 947 (C.A.D.C.1976).[9]
515 U.S. at 520-21, 115 S.Ct. 2310 (emphasis added).
Admittedly, this Court’s opinion 35 years ago in United States v. Carson, 15 USCMA at 408, 35 CMR at 380, might be viewed as counter to Gaudin. Carson suggests in dicta that a law officer, not a court of members, must decide whether a disobeyed order was lawful in a disobedience-of-orders case. However, Carson was decided thirty years before Gaudin and its dicta rests largely on civilian authorities overturned or limited by the Gaudin decision. See United States v. Ornelas, 2 USCMA at 100, 6 CMR at 100. See also Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. Moreover, in a subsequent case, this Court more narrowly applied the Carson dicta to the particular situation where a law officer construed a regulation as inapplicable as a matter of law to the order violated. See United States v. Phillips, 18 USCMA at 234-35, 39 CMR at 234-35. See also United States v. Austin, 27 MJ at 230-31.
In any event, where a regulation is found applicable as a matter of law to a disobeyed order but its violation is at issue, we have held, consistent with Gaudin, that this question must be sent to the members to resolve depending on the facts and circumstances of a particular case. See United States v. Smith, 21 USCMA 231, 235, 45 CMR 5, 9 (1972); United States v. Robinson, 6 USC-MA at 356, 20 CMR at 72. See also United States v. Carson, supra at 409, 35 CMR at 381; United States v. Gray, 6 USCMA 615, 618-20, 20 CMR 331, 334-36 (1956); United States v. Phillips, supra at 235, 39 CMR at 235; United States v. Ornelas, supra at 101, 6 CMR at 101.[10]
It must be recognized that Gaudin definitively ejqdained a jury’s responsibility to decide all the elements of a charged offense. *126 See United States v. Swindall, 107 F.3d 831, 835 (11th Cir.1997). Some circuits have subsequently attempted to distinguish Gaudin where the question withheld from the jury constitutes a pure question of statutory construction. See United States v. Credit, 95 F.3d 362, 364 (5th Cir.1996), cert. denied, 519 U.S. 1138, 117 S.Ct. 1008, 136 L.Ed.2d 886 (1997); United States v. Amparo, 68 F.3d 1222, 1225 (9th Cir.1995). However, in appellant’s case, the military judge and the Court of Criminal Appeals found as fact that appellant’s unit was on maneuvers and that safety conditions arising from the deployment of appellant’s unit to Macedonia warranted the wearing of the United Nations badges and accoutrements. Accordingly, the post-Gaudin decisions on elements raising pure questions of law are not relevant here.
Even if the trial judge correctly decided appellant’s challenge based on AR 670-1 as a pure question of law, error under Gaudin still occurred in this case.[11] The military judge might have concluded that appellant’s regulatory challenge was not applicable to the order disobeyed in this case (see United States v. Phillips, supra) or that the regulation conferred no right on appellant to disobey his commander’s order (see United States v. Hangsleben, 8 USCMA 320, 322-23, 24 CMR 130, 132-33 (1957)). Nevertheless, he was still required to instruct the members that they must determine the lawfulness of the violated order in this case in general without regard to appellant’s legally rejected claims of unlawfulness (i.e., the general-inference-of-lawfulness question). See Article 51(c) and paras. 14 and 16, Part IV, Manual, supra (1995 ed.). Error under Gaudin occurred on this basis as well.
IX

Harmless Error under Neder v. United States, 527 U.S. 1 (1999)

Having concluded that the military judge erred in removing the question of the lawfulness of order allegedly violated in this case from the members’ consideration, a question of prejudice remains. See Neder v. United States, supra at 4, 119 S.Ct. 1827. In Neder, the Supreme Court held that a federal district court’s refusal to submit the materiality element of offenses under the federal tax, mail, wire, and bank-fraud statutes was subject to harmless-error analysis. Id. at 4, 119 S.Ct. 1827. It further held such error as to the tax fraud was harmless in Neder’s case because based on the whole record it concluded “beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” Id. at 15, 119 S.Ct. 1827.
The Supreme Court in Neder clearly delineated the harmless-error inquiry required for the type of error we have in the instant case, as follows:
We believe that where an omitted element is supported by uncontroverted evidence, this approach reaches an appropriate balance between “society’s interest in punishing the guilty [and] the method by which decisions of guilt are to be made.” Connecticut v. Johnson, 460 U.S., at 86, 103 S.Ct. 969 (plurality opinion). The harmless-error doctrine, we have said, “recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant’s guilt or innocence, ____ and promotes public respect for the criminal process by focusing on the underlying fairness of the trial.” Van Arsdall, supra, at 681. At the same time, we have recognized that trial by jury in serious criminal cases “was designed ‘to guard against a spirit of oppression and tyranny on the part of rulers,’ and ‘was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties.’ ” Gaudin, 515 U.S., at 510-511, 115 S.Ct. 2310 (quoting 2 J. Story, Commentaries on the Constitution of the Unit *127 ed States 540-541 (4th ed. 1873)). In a case such as this one, where a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee.
Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error — for example, where• the defendant contested the omitted element and raised evidence sufficient to support a contrary finding — -it should not find the error harmless.
527 U.S. at 18-19, 119 S.Ct. 1827 (emphasis added).
Turning to the present case, the Government was required to prove to the members the essential elements of the offense of disobedience of orders, including the lawfulness of the order to wear the UN patches and cap. See United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444, and Article 51(c), UCMJ. In this regard, it normally would be entitled to rely on an inference of lawfulness provided by the President in paragraph 14c(2)(a)(i), Part IV, 1984 Manual, supra (1995 ed.). However, the defense evidenced paragraph 3-4(k), AR 670-1 (1 Sept. 1992), and paragraph 113, Part IV, Manual, supra (1995 ed.) (wearing unauthorized insignia as offense under Article 134). The former provided that “[f]oreign badges, distinctive unit insignia and regiment distinctive insignia will not be worn on these uniforms [BDUs].” The latter prohibited the unauthorized wearing of “insignia, decoration, badge, ribbon, device, or lapel button upon the accused’s uniform,” in violation of Article 134.
This is some evidence that appellant’s order to wear UN badges was “patently illegal” because it “direet[ed] the commission of a crime.” Para. 14c(2)(a)(i), Manual, supra (1995 ed.); see Article 92(1) (Disobedience of a Lawful General Regulation). See also United States v. White, 17 USCMA 211, 214, 38 CMR 9, 12 (1967) (evidence of violated regulation sufficient to offset presumption confinement lawful); cf. United States v. Wartsbaugh, 21 USCMA 535, 540, 45 CMR 309, 314 (1972) (where no evidence order violated regulation, defense evidence insufficient to rebut presumption of lawfulness of order). In these circumstances, the Manual for Courts-Martial generally provides that the Government must prove the lawfulness of the disobeyed order without benefit of the inference of lawfulness, and it was required to affirmatively show that the order did not violate paragraph 3-4(k), AR 670-1; see United States v. Wartsbaugh, supra. As noted above, paragraph 1-18 permits a commander to “require the wearing of organizational protective or reflective items or other occupational health or safety equipment with the uniform when safety considerations make it appropriate.” (Emphasis added.) Moreover, paragraph 2-6d provides that “[t]he commander in charge of units on maneuver may prescribe the uniform to be worn within the maneuver area.” (Emphasis added.) Accordingly, the prosecution could easily meet its burden by proving as fact to the members that the wearing of the UN badges and cap was otherwise authorized by an authority superior to that issuing the U.S. Army Uniform Regulation (Department of the Army) or that the above-cited sections of the uniform regulation authorized the wearing of the UN accoutrements.
As noted earlier in this opinion, it was uncontroverted in appellant’s case that he was ordered to wear the UN badges and cap pertinent to the official deployment of his unit to Macedonia as part of a peacekeeping mission. (R. 581) Its mission was “to observe, monitor, and report along the Macedonian and Serbian border.” (R. 581) It was also uncontroverted that the order to wear these badges was given by his commanders as part of the operations plans for the mission and for safety purposes. (R. 710; 667). Finally, although the defense asserted that there were questions of fact to decide in this case, it proffered no evidence that the safety conditions in Macedonia did not make the *128 wearing of these badges appropriate or that this deployment was not a maneuver within the meaning of AR 670-1. See United States v. Wartsbaugh, supra at 540, 45 CMR at 314; United States v. Smith, 21 USCMA at 234-35, 45 CMR at 8-9. Accordingly, there was no real contest in this case on the lawfulness of this order in terms of this regulation, and appellant was not prejudiced by the failure of the military judge to instruct on this element of the offense. See also Johnson v. United States, 520 U.S. at 470, 117 S.Ct. 1544.
X

Conclusion

In sum, I conclude that the military judge erred in withdrawing from the members’ consideration an element of the charged offense of disobedience of orders, i.e., the lawfulness of the order disobeyed. See generally United States v. Gaudin, supra. See Unger v. Ziemniak, 27 MJ at 358; United States v. Robinson, 6 USCMA 347, 20 CMR 63. However, this error in my view was harmless beyond a reasonable doubt in this case. See Neder v. United States, supra. There was overwhelming evidence presented in this case, uncontroverted by the defense, that the order to wear the UN patches and cap was lawful, i.e., it was properly authorized, related to a military duty, and violated no applicable service uniform regulations. See generally para. 16c(l)(a) and (c), Part IV, Manual, supra (1995 ed.). Accordingly, I join my colleagues in affirming appellant’s conviction in this case.
In reaching this legal decision, I am not unmindful of the concept of military duty. When one takes a broad view of the factual context and circumstances of the order Specialist New was given, it is clear that he had a duty to obey it. Specialist New was being sent in harm’s way at the command of his Nation. The wearing of UN insignia and headgear would only help him and his fellow soldiers to more safely perform their peacekeeping mission to Macedonia. New had a duty to his unit — a duty to help his unit accomplish its mission with the least risk of loss of life. I am reminded of a passage of Justice Oliver Wendell Holmes, Jr., in an address to the Harvard Graduating Class of 1895. The speech was entitled, “The Soldier’s Faith,” and it clearly reflected the views of a Judge who in his youth had seen war as a soldier:
[I]n the midst of doubt, in the collapse of creeds, there is one thing I do not doubt ... and that is that the faith is true and adorable which leads a soldier to throw away his life in obedience to a blindly accepted duty, in a cause which he little understands, in a plan of campaign of which he has little notion, under tactics of which he does not see the use.
“The Soldier’s Faith,” May 30, 1895, in Holmes, Speeches 56, 59 (1913).
Although I have found legal error in this ease, I find that the error in the context of this case was harmless beyond a reasonable doubt, and I see no reason to reverse this case. See also Article 59(a), UCMJ, 10 USC § 859(a). As the renowned English Judge, Sir John Powell, so wisely said a long time ago:
Let us consider the reason of the case. For nothing is law that is not reason.[3]

. Although this case involves a uniform order, the case is far from being simple. Justice Oliver Wendell Holmes, Jr., once said:
Great cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend.
*117 Northern Securities Company v. United States, 193 U.S. 197, 400-01, 24 S.Ct. 436, 48 L.Ed. 679 (1904) (Holmes, J., dissenting). The present case may be a great case, but we must be mindful not to bend the cherished principle that properly contested elements of a crime are to be decided by the jury whether it is a civilian or a military jury.

. A military accused does not have a right to a trial by jury of his peers as provided in the Sixth Amendment. He does have a right to a trial by his military superiors (see Article 25(d)(1), UCMJ, 10 USC § 825(d)(1)) who are selected by the convening authority (see Article 25(d)(2)). I have suggested that the Uniform Code of Military Justice be amended to provide for random selection of members. See United States v. Roland, 50 MJ 66, 70 (1999) (Sullivan, J., concurring in the result).
Nevertheless, court-martial panel members in a functional sense are commonly referred to as a military jury. See F. Gilligan and F. Lederer, 2 Court-Martial Procedure § 15-11.00 at 3-4 (1999) ("As a consequence, as long as a military judge is present, court members are merely military jurors lacking any powers that would be considered unique in the civilian world.”) (Footnote omitted; emphasis added); D. Schlueter,
Military Criminal Justice'. Practice and Procedure § 15-2(e) at 635 (5th ed.1999) (“The court members comprise the military’s counterpart of the civilian jury.”); H. Moyer, Justice and the Military § 2-602 at 529 (1972) ("As with civilian juries, military court members vote on the findings of guilty or innocence.”). This Court has also held that certain due process requirements pertaining to civilian juries are applicable to military courts of members even though the military accused has no Sixth Amendment right to trial by jury. See United States v. Witham, 47 MJ 297, 300-03 (1997); United States v. Tulloch, 47 MJ 283, 285 (1997).

. Every cadet takes the following oath when he enters the United States Military Academy at West Point, New York:
"I, (full name), do solemnly swear that I will support the Constitution of the United States, and bear true allegiance to the National Government; that I will maintain and defend the sovereignty of the United States, paramount to any and all allegiance, sovereignty, or fealty I may owe to any State or country whatsoever; and that I will at all times obey the legal orders of my superior officers, and the Uniform Code of Military Justice.” 10 USC § 4346 (emphasis added).

. The majority’s citations to Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 92 L.Ed. 59 (1947), and Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), do not support its contrary position in this case. In Cox, the legality of the classification which was alleged to have violated the applicable regulation was not an element of the charged criminal offense. In Yakus, Congress expressly provided that a person could be prosecuted for violating certain regulations or regulatory decisions without regard to the validity of such a regulation unless the accused previously challenged them in an appropriate civil proceeding or exhausted his administrative remedies. Cf. Article 96, UCMJ, 10 USC § 896 (prohibiting releasing prisoner without authority "whether or not the prisoner was committed in strict compliance with law.”).

. This was a change from previous Army Manuals which did not expressly describe lawfulness as an element of the offense of disobedience of orders but simply noted commands can be presumed lawful in its explanation of the elements of this offense. Paras. 1526 and 1536, Manual for Courts-Martial, U.S. Army, 1949; paras. 1346 and 1356, Manual for Courts-Martial, U.S. Army, 1928; paras. 415 and 416, Manual for Courts-Martial, U.S. Army, 1917. See United States v. Trani, 1 USCMA 293, 295, 3 CMR 27, 29 (1952) (discussing Article of War (AW) 64 and paragraph 1526, Manual for Courts-Martial, U.S. Army, 1949).

. The majority cannot have it both ways. If the lawfulness of an order is surplusage and implied in the element of an order, the members would still be required to decide lawfulness as part of their findings on the order element of the offense. See para. 16b(2)(a), Part IV, Manual, supra (1995 ed.).

. Para. 57b, Manual for Courts-Martial, United States, 1969 (Revised Edition) (no longer in ef-feet) did say, based on Carson, that the lawfulness of orders is "customarily” a question of law.

. The majority’s position in this case also cannot be squared with numerous decisions of this Court after Carson which hold that the question of an accused’s military status (in personam jurisdiction) must also be submitted to the members if military status is an element of the offense. See United States v. McGinnis, 15 MJ 345 (1983); United States v. Marsh, 15 MJ 252 (1983); United States v. McDonagh, 14 MJ 415 (1983); United States v. Laws, 11 MJ 475, 476 (CMA 1981) (opinion of Cook, J.).

. Article 51(b), UCMJ, 10 USC § 851(b), addresses the proper procedure for handling "all questions of law and all interlocutory questions arising during the proceedings____" Article 51(c), however, addresses the proper procedure for handling “the elements of the offense....” Avoiding a constitutional problem (see Weiss v. United States, 510 U.S. 163, 176-81, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994)), I would construe these provisions in accordance with United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), and recognize that "[i]t is commonplace for the same mixed question of law and fact to be assigned to the court for one purpose, and to the jury for another.” Id. at 521, 115 S.Ct. 2310.

. The majority suggests a different practice based on dicta in United States v. Carson, 15 USCMA 407, 35 CMR 379 (1965), and its gloss of the discussion to various Rules for Court-Martial. (55 MJ at 101-02) I disagree for several reasons. First, the Military Judges’ Guide (now the Benchbook) for some 30 years has expressly recognized and followed this approach. See para. 4-29, Military Judges’ Guide (Dept. of the Army Pamphlet 27-9 (1969)). Second, United States v. Carson, 15 USCMA 407, 35 CMR 379 (1965), and paragraph 51b, Manual for Courts-Martial, United States, 1969 (Revised Edition), cited by the majority, actually recognized and approved the Ornelas procedure. Third, although the President promulgated paragraph 51b, 1969 Manual, supra, this provision did not exist prior to 1969 and was omitted in the binding provisions of all versions of the Manual starting in 1984. Fourth, the Manual for Courts-Martial makes it quite clear that the Discussion [see 55 MJ at 101] is not an enforceable part of the Manual. Para. 4, Discussion, Part I, Preamble. Finally, the Discussion of RCM 801(e)(5) only provides that the legality of orders may be questions of fact; it does not say who decides these questions of fact. Accordingly, this is not a case asking whether a certain longstanding military procedure is constitutional as presented in Weiss v. United States, 510 U.S. at 176-81, 114 S.Ct. 752, but instead is a case where this appellate court institutes a new military procedure inconsistent with that longstanding practice; see United States v. Scheffer, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).

. Appellant’s additional arguments are that the UN-patches-and-cap order violated the constitutional prohibition against involuntary servitude (Amend. XIII), the UN Participation Act, and his enlistment contract. These arguments pertain to the legality of his unit’s deployment order to Macedonia as part of the UN Peacekeeping Force, not the legality of the order to wear the UN accoutrements in Germany prior to that deployment. See United States v. Lenox, 21 USCMA 314, 45 CMR 88 (1972).

. Coggs v. Bernard, 2 Lord Raymond Reports 909, 911 (1703).